THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES JOHNSON, Appellant.

The provisions of the act of 1822 (§ 3, chap. 137, Laws of 1822), in reference to the drawing of jurors in the county of Seneca, have not been repealed, and the provisions, therefore, of the Codes of Criminal and Civil Procedure (Code of Crim. Pro. § 358; Code of Civil Pro. §§ 1027, 1062) do not apply to that county. (Code of Civil Pro. § 3347, subd. 7.)

Upon the trial of an indictment for murder in the first degree, it appeared that the homicide was committed while the defendant was attempting to escape from jail where he was confined upon a charge of felony. Defendant objected to the admission in evidence of the commitments, under which he was held, on the ground that they "did not comply with the Code of Criminal Procedure and the justice had no right to issue them." It had been proved that the justice issuing them was an acting justice of the peace. One of the commitments recited that defendant was held on a charge of "burglary in the third degree;" another that he was held upon a charge of "grand larceny in the first degree." *Held*, these statements were

a substantial compliance with the provision of said Code (§ 214), requiring the nature of the crime to be briefly stated in a commitment; that a reference to the statutory definition of the crime showed, with sufficient clearness and precision for the purpose in view, the nature of the crime.

Also, *held*, that it was not incumbent on the part of the People, in order to make out a *prima facie* case, that defendant was lawfully restrained of his liberty upon a charge of felony, to put in evidence the proceedings upon the examination of defendant; that it was sufficient to show that he was arrested upon a warrant issued by competent authority, was examined before a duly authorized magistrate upon the charge therein contained, was held to answer, and that commitment was made and delivered to the sheriff; that jurisdiction in the magistrate over the subject-matter and the person having been established, he had authority to make the commitment, and the recitals therein contained are presumptive evidence of the facts stated.

Aside from proof of jurisdictional facts, the orders and precepts of courts of limited jurisdiction have the same force and are entitled to the same presumption as apply to those of courts of more extensive authority.

Also, *held*, that as the evidence showed that the death charged was caused by the act of defendant while he was attempting to escape from jail where he was confined under said commitments, it legally tended to establish that the death occurred while defendant was attempting to commit a felony (Penal Code, §§ 685, 686); and so that he was guilty of the crime of murder in the first degree. (Penal Code, § 183, subd. 3.)

Subsequent to the trial, a motion was made on behalf of defendant upon affidavits to set aside the verdict upon the allegation of irregularities on the part of the jury during the trial, *i. e.*, that the jury were allowed to view the scene of the crime without having first administered to the officers attending them the oath prescribed by the Code of Criminal Procedure (§ 412), and that members of the jury, while engaged in making such view, received information from the officers as to the location of the cells occupied by the prisoners attempting to escape, etc. All the facts were known to the prisoner's counsel and were not brought to the attention of the court or objected to, and said counsel assented that the jury should view the scene of the crime. The motion was denied. *Held*, no error; that the court had authority to permit the jury to take the view; that the omission of the oath to the officers was an irregularity merely, which could be waived by defendant, and was waived by the consent of his counsel that the view should be taken, and by his omission to object or to call attention of the court to the omission of the oath.

Such a motion is addressed to the sound discretion of the trial court (Code of Crim. Pro. § 465), and the exercise of that discretion is not reviewable here, unless it appears that it has been abused to the prejudice of defendant.

(Argued June 6, 1888; decided June 19, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 30, 1887, which affirmed a judgment of the Court of Oyer and Terminer in and for the county of Seneca, entered upon a verdict convicting the defendant of the crime of murder in the first degree.

*Corydon Rood* for appellant. The recital in the warrant of arrest that "information upon oath having been this day laid before me," etc., was not sufficient. If the information was taken, and evidence taken under it, the papers should have been returned. (Code Criminal Pro. §§ 205, 208.) Conceding the pretended commitment to be good on its face, still the defendant should not have been found guilty of murder, the district attorney not having introduced the judgment of the Justice's Court, showing his right to commit the defendant to jail. (Code Criminal Pro. § 214.) Defendant did not escape from the jail, the sheriff having no legal right to detain him against his will. (Penal Code, § 85.) An attempt to escape prison or from an officer is not a crime. (Penal Code, § 34.) If a prisoner flees and the jailer retakes him without losing sight of him, it was not an escape. (2 Hawk. 1756.) An escape is when one who is arrested gains his liberty before he is delivered by due course of law. (1 Russ on Cr. 367.) The court erred in allowing the jury to view the place in which the crime charged against the defendant is alleged to have been committed with the officers without their being sworn as required by section 412 of the Code of Criminal Procedure. (*People* v. *Palmer*, 43 Hun, 397.) In a capital case it must affirmatively appear, on the part of the prosecution, by the clearest evidence and beyond a reasonable doubt, that no injury to the prisoner could have occurred by the irregularity complained of. (*Eastwood* v. *People*, 3 Park. Cr. R. 25.) An accused person placed on trial for a criminal offense may sit still and remain silent and require the public prosecutor to convict him on legitimate testimony in accordance with

the forms and rules prescribed for the administration of the criminal law. (*People* v. *Tyrrell*, 3 N. Y. Crim. R. 148.)

*Frederick L. Manning* for respondent. An ordinary common-law count is, through all the mutations of the statutes defining the crime of murder and discriminating between its different degrees, sufficient as a pleading to sustain a general verdict of guilty. (*People* v. *Willett*, 102 N. Y. 251; *People* v. *Cox*, 80 id. 500; *People* v. *Dumar*, 5 N. Y. Crim. R. 55; *People* v. *Conroy*, 97 N. Y. 62.) The defendant's challenge of the panel of jurors, as well as the additional panel ordered and drawn, for the reason that such jurors were not drawn from the body of the county of Seneca, but were drawn from a box containing only a partial list of the names of those persons designated to act as trial jurors for said county, was properly overruled. (3 R. S. [2d ed.] 110; id. 293; Code Crim. Pro. § 358; Code Civ. Pro. § 3347, subd. 7.) The defendant's objection to the commitment was without merit and properly overruled. (Code Crim. Pro. § 214.) The warrant under which the defendant was arrested for the crime of burglary and larceny was in proper form. (Code Crim. Pro. §§ 151, 152; *Atchinson* v. *Spencer*, 9 Wend. 62; *People* v. *McLeod*, 1 Hill, 377.) The charge of the judge, that if a prisoner confined in a jail on a charge of felony, in attempting to escape therefrom kills another, the killing is murder in the first degree, is correct. (Penal Code, §§ 14, 85, 92, 93, 183.) An escape from prison is a crime, as defined by section 3 of the Penal Code, and a felony. (Penal Code, §§ 5, 686; *People* v. *Lyon*, 99 N. Y. 210; *People* v. *Van Steenburg*, 1 Park. Crim. R. 39.) The viewing of the premises was properly allowed. (Code Crim. Pro. §§ 411, 412.) No irregularity was shown that could vitiate the verdict. (28 Hun, 1; *People* v. *Draper*, 1 N. Y. Crim. R. 139; *People* v. *Carnal*, 1 Park. Crim. R. 256; *People* v. *Hartung*, 4 id. 256, 319–329; *Wilson* v. *People*, id. 619; *People* v. *Seeley*, 3 N. Y. Crim. R. 225; *People* v. *Menkin*, 3 id. 233.)

Misconduct of a juror in going to take a view of the premises is waived, if objection to continuing the trial before him is not promptly made on discovery of the fact. (*Stampforke* v. *Steffins*, 79 Ill. 303.) Irregularity on the part of the jury prejudicial to the defendant must be affirmatively shown, it will not be presumed. (*People* v. *Hartung*, 4 Park. Crim. R. 319.) The statements in the judgment record that the prisoner came into court at the commencement of the trial, and was at the bar when the jurors were sworn, and that the case was continued by adjournment until the date of the rendition and entry of verdict, sufficiently indicate that the trial was continued with the incidents before described, of which the presence of the prisoner was one. (*Stevens* v. *People*, 19 N. Y. 549–552.) When facts are stated in the record sufficient to confer jurisdiction upon a court of such high attributes, the inference is that, as to its continued proceedings, *omnia rite acta*. (19 N. Y. 552; *People* v. *Bradner*, 107 id. 1.) The continuance of a cross-examination of the People's witnesses during the brief absence of the prisoner on the trial is not a violation of the statutory provision that no person can be tried for a felony "unless he be personally present during such trial." (*People* v. *Bragle*, 88 N. Y. 585.)

RUGER, Ch. J. The defendant was jointly indicted with Edward Caldwell and Marcus Fish for the murder of John Walters on the 9th day of January, 1887. Johnson elected to have a separate trial, which was awarded to him, and took place on the 4th and 5th days of April, 1887 and resulted in his conviction of the crime of murder in the first degree. The conviction was affirmed by the General Term of the Supreme Court, and the defendant appeals from the judgment of affirmance to this court. We have carefully examined the evidence appearing in the record and are of the opinion that it fully supports the verdict of the jury. Indeed, no question is made but that Walters received a blow upon the head, inflicted by the defendant with an iron instrument called a poker or stove shaker, which fractured his skull and

occasioned his death. The only evidence given on behalf of the defendant was the testimony of one witness, to the effect that Cronin, one of the People's witnesses, had made contradictory statements in respect to the affray about which he had testified. The attempted contradiction was quite inconclusive, and left the case made by the People's evidence, substantially unaffected by opposing evidence. It is claimed, however, that certain rulings made by the court in the course of the trial and thereafter, were erroneous, and, for that reason, the judgment should be reversed.

The evidence disclosed that the defendant, at the time of the homicide, was confined in the Seneca county jail upon two commitments, one for the crime of burglary in the third degree, and the other for grand larceny in the first degree; that he, with certain other persons confined in the jail, conspired to break out therefrom by digging a hole through the walls, but being unable for want of time to accomplish their purpose in this manner, they concluded to assault their jailers when opportunity offered, and thus escape. Their plan, as expressed by Johnson, was to "slug the sheriff" and thus overcome expected obstructions to their escape.

About nine o'clock P. M. of the ninth day of January, the deceased, accompanied by the sheriff and deputy jailer Cronin, proceeded in their customary manner to lock up the prisoners for the night. There were some fifteen or twenty prisoners in the jail corridor, among whom was the defendant. Cronin unlocked the inside door of the jail and swung it back into the corridor where it was seized and held open by Fisk, one of the conspirators, while Johnson and Caldwell assaulted the approaching keepers. Walters immediately stepped on to the stairs leading down into the corridor, and as he was descending them to the floor of the jail was struck on the head with an iron instrument by Johnson, which felled him to the floor. Caldwell also struck him with a wooden club or stick. Johnson and Caldwell then passed up the stairway and through the door into a narrow entry-way where they were met by the sheriff, who, after a severe and prolonged struggle, succeeded

in driving them, at the point of the pistol, back into their cells, and it was for the crime thus effected that Johnson was indicted and convicted.

No questions are raised involving the merits of the case and but few argued that we deem it necessary to consider, and those are quite technical in character.

*First.* The defendant challenged the panel of jurors upon the ground that they were not drawn from the body of the county as provided by section 358 of the Code of Criminal Procedure. That section requires a trial jury to be formed " as prescribed by the Code of Civil Procedure." The general provision of the Code of Civil Procedure requires juries to serve in courts of record in the several counties of the state, except Kings and New York, to be drawn from the lists of persons prepared for that purpose by the county clerk, from other lists of jurors returned to that officer by the various town officers in the several counties of the state, charged with the duty of making such lists. (Code of Civ. Pro. §§ 1027 to 1062.)

It is, however, further provided by subdivision 7, section 3347, that the above referred to provisions do not affect " any special provisions of law remaining unrepealed after May, 1877, whereby trial jurors are directed to be procured for a particular court of record from a particular locality or whereby a county is divided into two or more jury districts."

The county of Seneca was divided into two jury districts by section 3 of chapter 137, Laws of 1822, and it was thereby enacted that the clerk of the county should keep the names of the jurors in such districts separate and the jurors should be drawn for each court from the jury district in which the court is to be held.

We cannot find that this law has been repealed, and are informed that from the time of its enactment, it has been the uniform practice in the county of Seneca to make up jury lists in the manner pursued in this case. The challenge to the jury was, therefore, properly overruled.

*Second.* Upon the trial the defendant objected to the admis-

sion in evidence of the commitments upon which he was confined in the jail. The point of this objection arises out of the fact that some of the counts of the indictment charged the homicide to have been committed while the defendant was engaged in the commission of or an attempt to commit a felony, to wit, to escape from jail where he was confined upon a charge of felony. This charge, if sustained by proof, would render the killing of a human being, under such circumstances, the crime of murder in the first degree, without regard to the degree of deliberation or premeditation exercised in its commission. Section 85 of the Penal Code provides that "a prisoner who, being confined in a prison or being in lawful custody, by force or fraud, escapes from such prison or custody is guilty of felony, if such custody or confinement is upon a charge, arrest, commitment or conviction for a felony;" and section 686 enacts that a person who unsuccessfully attempts to commit a crime is indictable and punishable by imprisonment for not more than half the longest term prescribed upon conviction for the commission of the offense attempted. A felony is defined as a crime which is or may be punishable by either death or imprisonment in a state prison. (Penal Code, § 5.)

We presume that the defendant, with the view of raising the question that he was not lawfully confined in jail, objected to the admission of the commitments in evidence upon the ground that they "did not comply with the Code of Criminal Procedure and the justice had no right to issue them." It had then been proved that the justice making the commitments was an acting justice of the peace of the town of Seneca Falls in the county of Seneca, and, therefore, the objection could not successfully be raised that he had not authority to issue such commitments. The principal point urged to the form of the commitments is that the statement that Charles Johnson was held to answer upon a "charge of burglary in the third degree," and in the other commitment that he was held upon "a charge of grand larceny in the first degree,"

were not a compliance with section 214 of the Code of Criminal Procedure requiring the nature of the crime to be briefly stated therein. We think the statements made were a sufficient compliance with the requirements of the statute. There is nothing in the office which a commitment is designed to perform, requiring a detailed statement of the circumstances attending the commission of the crime. It is intended merely as a protection to the officer executing it, and as showing the authority upon which he restrains the accused person of his liberty. A reference to the statutory definitions of crimes shows, with sufficient clearness and precision for the purposes in view, the nature of the crime charged in the commitment. The fact that it states the name of a crime does not demonstrate that it does not also define the nature of the crime and especially within the meaning of a provision requiring such crime to be briefly stated. In every other respect the commitment seems to be in exact conformity with the requirements of the statute.

We think it was not incumbent upon the People, in order to make out a *prima facie* case, that the defendant was lawfully restrained of his liberty upon a charge of felony, to put in evidence the proceedings taken upon the examination of the defendant It was shown that he was arrested upon a valid warrant issued by competent authority, and was examined before a magistrate authorized to perform that duty, upon the charge therein contained and held to answer the same, and the commitments were then made and delivered to the sheriff. The evidence tended to establish all of the jurisdictional facts necessary to give the magistrate authority to make the commitments.

There was no affirmative evidence given that the magistrate had omitted any act which he was required by law to perform, in the course of the examination, and we think, so far as any such requirement was discretionary merely, that he is entitled to the presumption that he performed his duty. The jurisdiction of the magistrate over the subject-matter of the examination, and the person of the defendant having been established, he had authority to make the commitments in

question, and the recitals therein contained are presumptive evidence of the facts stated therein. (*Scott* v. *Ely*, 4 Wend. 555.) Aside from the proof of jurisdictional facts the orders and precepts of courts of inferior and limited jurisdiction have the same force and effect and are entitled to the same presumption as apply to thóse of courts of more extensive authority: (*Wright* v. *Nostrand*, 94 N. Y. 31.)

The evidence tended to establish the fact that the death of Walters occurred while Johnson was attempting to commit a felony, and, if it was caused by the act of the defendant, legally tended to establish his guilt of the crime of murder in the first degree. But a single exception was taken to the charge of the court, and that is so manifestly unfounded that it is unnecessary to notice it more particularly.

Subsequent to the trial a motion upon affidavits was made by the defendant to set aside the verdict of the jury upon the allegation· of irregularities in their conduct occurring during the course of the trial. The alleged irregularities consisted :

*First.* In allowing the jury to view the scene of the crime without first administering the oath to the officers in attendance upon them, prescribed by section 412 of the Code of Criminal Procedure.

*Second.* That members of the jury, while engaged in making such view, received information from the officers attending them as to the location of the cells occupied by the several prisoners attempting to effect an escape, and the location of the body of the deceased on the floor of the jail after his death.

It may be said that these facts were known to the prisoner's counsel at the time they transpired, and were neither brought to the attention of the court or objected to by them. The prisoner's counsel assented to the proposition that the jury should view the scene of the crime, and the court had undoubted authority to permit them to do so. (Code Crim. Pro. § 411.) The location of the prisoners' cells, as well as the position of Walter's body after death, was the subject of much oral testimony on the trial from eye-witnesses as well as illustrations by a diagram of the premises, and they were neither of them

the subject of controversy or dispute on the trial. It is impossible to see how the information, alleged to have been given to the jury, was of the slightest materiality upon any issue of the trial. The answering affidavits on the part of the People controverted the allegations that any communication took place between the jury and the officers on the subject referred to, and the trial court might well have found that the defendant's allegations were not true.

We are, however, of the opinion that the motion in question was addressed to the sound discretion of the trial court, and that we have no right to review the exercise of such discretion, unless it appears that it has been abused to the prejudice of the defendant. The causes for which the trial court may grant a new trial to a defendant in a criminal case are specifically pointed out in section 465 of the Code of Criminal Procedure, and, among others, embrace the following :

*First.* " When the trial has been had in his absence when the indictment be for a felony."

*Second.* When the jury has received any evidence out of court other than that resulting from a view as provided in section 411.

*Third.* When they " have been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

In such cases the trial court is authorized to grant a new trial provided they can see that the "substantial rights" of the defendant have been prejudiced, and not otherwise. There is no evidence that any part of the trial was had in the absence of the defendant, or that he has been deprived of any right which the statute gives, in order to secure him a fair and impartial trial.

The omission of the trial court to cause the officers in charge of the jury, while taking a view, to take the oath prescribed by section 412, was an irregularity merely, which could be waived by the defendant, and was, we think, waived by the consent of his counsel that such view should be taken, and by his omission to object or call the attention of the court to the

want of such oath. However that may be, it was, upon the facts in this case, a question for the court to determine whether any substantial right of the defendant had been prejudiced by the conduct complained of, and we do not think there is any sufficient reason for us to interfere in the conclusions reached by it in respect thereto. (*People* v. *Draper*, 1 N. Y. Crim. Rep. 139.)

The judgment of the General Term should, therefore, be affirmed.

All concur.

Judgment affirmed.