HENRY R. C. FOSTER v. THE STATE.

1. HOMICIDE. *Evidence. Medical expert. Common knowledge.*

　Where, on a murder trial, the relative position of the accused and the deceased, at the time of the killing, is a material inquiry, a medical expert, who has made a *post mortem* examination, may testify as to the point of entrance and exit, and the course and range of the ball through the body, but it is error to permit him to state his opinion that a hole in an adjacent wall was within the range, or to state his opinion as to the position of the arm and hand of the deceased when shot, these being conclusions resting in common knowledge, and not upon scientific learning.

2. SAME. *Trial. Presence of accused. Code 1892, § 2391. Constitutionality.*

　The constitutional provision that one accused of crime shall be confronted by the witnesses against him, requires that all evidence, whether of living witnesses or inanimate objects, be produced before the jury in the presence of the accused and the court. Section 2391, code 1892, to the extent that it authorizes a jury, in a criminal case, to visit the scene of the offense unaccompanied by the accused or the court, is unconstitutional.

3. SAME.  *Jury; visiting scene of homicide.  Case.*

   Accordingly, where a homicide occurred in a railway-coach, and, pending
   the trial for ·murder, the jury visit the scene, accompanied by the ac-
   cused, but the latter is prevented by the officer from entering the coach
   with the jury, this is a denial of his constitutional right to be present
   when evidence is introduced, notwithstanding the jury remains in the
   coach only two or three minutes, and it is only for a part of this time
   that the accused is excluded.

4. MURDER TRIAL.  *Evidence of previous difficulty.  Threats.*

   On a trial for murder, evidence of a previous assault by the deceased on the
   accused is incompetent, in the absence of evidence that it was connected
   with or related to the fatal rencounter, or that such previous assault was
   the result of enmity or threats of violence by deceased against the ac-
   cused.  And wherever the fact of a former difficulty may be proved by
   the state, the accused should be permitted to show its character.

FROM the circuit court of the second district of Yalobusha
county.

HON. EUGENE JOHNSON, Judge.  ·

Appellant has been convicted of the murder of John B.
Morgan, and sentenced to life imprisonment.  The facts of
the case, so far as necessary to an understanding of the
several points passed on by the court, are stated in the
opinion.

*A. J. McLaurin,* for appellant.

1. Where there is any evidence which, if believed, would
establish an overt, hostile act on the part of deceased at the ,
time of the killing, it is competent to show that when the
deceased and accused last met, the former had made a mur-
derous assault upon the latter, and afterwards threatened to
take defendant's life.  *Guice* v. *State,* 60 Miss., 714.  Where
such overt act is shown, the previous difficulty may be given
in evidence—not a part of it but all of it.

An apprehension of the necessity to slay may be created
by particular preceding acts, reasonably connected in time or
occasion with the fatal rencounter.  Wharton on Homicide
(2d Ed.), §§ 613, 617.

The character of the deceased for violence, as well as his animosity to defendant, as indicated by words and actions then and before, are admissible. *Ib.*, 607–618; *Cotton* v. *State*, 31 Miss., 504. The defendant is to be judged by his own lights. Wharton on Homicide, 610. See also *Chase* v. *State*, 46 Miss., 683.

2. It was error to admit testimony of the medical expert to show the position the arm of deceased must have been in when he was shot in the body. This could be as well known to others as to professional experts, being a matter about which the lay, or uneducated, mind is capable of forming a judgment. *Milwaukee Railway Co.* v. *Kellogg*, 94 U. S., 469. The jury, hearing such testimony, might conclude that it was bound by it, and would give no further consideration to the question. As it cannot be said that this error did not influence the jury to defendant's prejudice, a reversal must follow. *Jackson* v. *Jackson*, 28 Miss., 674.

3. The visit to the scene of the killing and inspection of the car was a part of the evidence of the state. It was introduced in the absence of the accused, and thus he was deprived of a constitutional right. The fact that he was excluded from the car by the mistake of the sheriff makes no difference. If one step in the trial can be taken in his absence, why not all? On this point see *Finch* v. *State*, 53 Miss., 363.

*Coleman, Coleman & Coleman*, on the same side.

1. The *overt act* of deceased is the main, the only, question at issue. The appellant and his witnesses say that, as he came up the aisle of the car, deceased saw him, and threw his hand back as if to draw a weapon. No witness for the prosecution denies this, but the medical expert is permitted to give an opinion as to the position of the arm and hand of deceased when shot, and this opinion is allowed to contradict the witnesses who swear as to facts. The expert is permitted to substitute his opinion for that of the jurors—in fact, to determine

the guilt or innocence of accused by his mere opinion. Expert testimony is never allowed to prove a matter of common experience and knowledge. On this subject, see 7 Wend., 73; 55 Ark., 593; 17 S. W. Rep., 1071; 93 Cal., 445; 62 *Ib.*, 303; 39 N. Y., 245; 82 Ala., 32; 5 Ohio (C. C.), 597; 1 Denio, 311; 23 Tex., 331; 24 N. J. Law, 352; 71 Ind., 66; 29 Mich., 4; 78 N. Y., 611; *Dillard* v. *State*, 58 Miss., 368. The same objection exists to the testimony of the witness, McDade, as to his opinion as to a matter of common knowledge. 24 Ark., 255; 10 Ga., 529; 59 Ala., 92; 29 Ohio St., 171; 45 Iowa, 246.

2. The court erred in excluding evidence of an assault made by the deceased on defendant a short time previous to the homicide. It was important to determine the exact state of defendant's mind at the time of the killing, since murder is essentially the creature of intent. Defendant claimed, and he had a right to show, that there was no malice in his conduct. The reason of the rule admitting evidence of previous assaults and threats is well stated in *Russell* v. *State*, 11 Tex. App., 288. See also 27 *Ib.*, 768; 21 *Ib.*, 420; 24 Kansas, 68; 22 *Ib.*, 226; 92 Cal., 511; 37 *Ib.*, 676; 15 *Ib.*, 476; 62 *Ib.*, 303; 6 Bax. (Tenn.), 454; 32 La. Ann., 1084; 21 Ind., 26; 37 *Ib.*, 62; 93 U. S., 465; 8 Bush, 481; 80 Ky., 32; 19 Vt., 121; *Guice* v. *State*, 60 Miss., 714; *Spivey* v. *State*, 58 *Ib.*, 858; *Newcomb* v. *State*, 37 *Ib.*, 383; *Johnson* v. *State*, 54 *Ib.*, 430; *Johnson* v. *State*, 66 *Ib.*, 189; *Hawthorne* v. *State*, 61 *Ib.*, 749.

3. The court erred in allowing the jury to view the car in the absence of defendant. It was his right to be confronted by the witnesses for him. On this point we refer the court to Kerr on Homicide, § 346; 30 Ark., 328; 24 La. Ann., 46; 5 Neb., 31; 70 Cal., 193; 68 *Ib.*, 630; 68 Mo., 202; 4 Hum. (Tenn.), 289.

*Frank Johnston*, attorney-general, for the state.

1. Evidence as to the merits of the former difficulty was properly excluded. It is competent to prove, in connection

with communicated threats, or an overt act, that the relations between the parties were not friendly, that they were at feud or that they had had previous difficulties or quarrels, as going to show the seriousness of the threats. But the inquiry cannot be extended into an investigation of the merits of previous difficulties. Otherwise, the inquiry would be interminable. It is immaterial which of the parties was in the right. The only thing to be proved is the fact of the enmity. See *Commander* v. *State*, 60 Ala., 1; *Gray* v. *State*, 63 *Ib.*, 66; *State* v. *Hannett*, 54 Vt., 83; Bishop's Crim. Pro., § 617. Where such evidence has been permitted, it is on the theory that the two difficulties are so immediately connected as that the former difficulty is part of the *res gestæ*. *Keene* v. *State*, 50 Mo., 357; *Haller* v. *State*, 37 Ind., 57; Wharton's Crim. Ev., § 753. In the case at bar, the prior difficulty was an isolated fact, and wholly inadmissible. Bishop's Crim. Pro., § 609.

2. Section 2391, code 1892, authorizing the jury to visit the scene of a crime, says nothing about the presence of the prisoner. The authorities are divided as to the right of the accused to be present. I refer the court to the argument of associate counsel, and his citation of authorities, only citing, in addition, *People* v. *Bonney*, 19 Cal., 427. The real inquiry seems to be whether any evidence was given in the absence of the prisoner.

In the case at bar, the defendant was present during the whole time, with the exception of about one minute. The momentary detention at the door was immaterial, and it seems to be trifling with the substance and playing with the shadow to argue that this was a prejudicial irregularity. I submit that the only right of the prisoner is that the jury shall not be tampered with.

3. There can be no error in the testimony of the medical expert as to the position of the right-hand and arm at the time of the second shot. The fact that the arm was then raised against the body stands as a physical fact in the case. The

inquiry is an open one as to where the arm was when the first shot was fired. This testimony did not affect that question. Again, his statement as to the course and range of the ball was not expert testimony. It was merely a description of the direction of the bullet. Any witness who had made the examination could have made the same statement. The testimony could not have changed the facts of the case. It bore only on the uncontroverted physical facts. If there was error in this respect, it was technical and not prejudicial. If incompetent testimony be introduced to prove a point already established, and on which there is no conflicting evidence, the verdict will not be disturbed. *Graves* v. *Railroad Co.,* 6 How. (Miss.), 548; *Fore* v. *Williams,* 35 Miss., 533; *Hand* v. *Grant,* 5 Smed. & M., 508; *Gerard's Case,* 50 Miss., 147. The above reasoning applies also to the testimony of the witness, McDade.

*C. B. Mitchell,* on the same side.

1. It was not error to refuse evidence of the details of the former difficulty. Proof was allowed of violent threats against the life of defendant, and that deceased had violently assaulted him a week or two before the killing. This is as far as the court could go; and, indeed, it would not have been error to exclude all the evidence as to the previous assault, as the evidence shows a case of assassination—that Judge Morgan never saw defendant when the latter shot, but was looking in the other direction. It was proper to exclude evidence of the particulars of the difficulty. *Sanders* v. *Commonwealth,* 18 S. W. Rep. (Ky.), 528; *People* v. *Thompson,* 92 Cal., 506; *Rutledge* v. *State,* 88 Ala., 85; '84 *Ib.,* 424; 74 *Ib.,* 18, 9; 63 *Ib.,* 66; 62 *Ib.,* 224. Moreover, the defendant got the full benefit of the evidence that deceased had assaulted and beaten him.

2. The failure of the accused to be present when the jury inspected the car was not error. The decisions as to this are divided, but that seems to be the better doctrine. He can-

not, if present, ask or answer any questions, or in any way interfere with the acts, operations or conclusions of the jury. He would be a mere spectator. *State* v. *Ah Lee*, 8 Oregon, 214; *State* v. *Morgan*, 15 *Ib.*, 262; 17 *Ib.*, 635. The jury decides on the evidence, not upon the view. 49 Cal., 609; *State* v. *Adams*, 20 Kansas, 311. These decisions were under statutes similar to ours, and hold that by the jury visiting the scene of the offense, the place of trial is not temporarily transferred from the court-house. The jurors are conducted in a body while thus absent. This means that the place of trial is unchanged, that the jury is temporarily removed, just as when the case is finally submitted to the jury and it retires for deliberation. There is only a temporary removal. The judge, the clerk, the officers, the records, the parties and all that go to make up the organization of the court, remain in the court-room. While in charge of an officer, the jury, in legal contemplation, is in the presence of the court. The court is the fixed and permanent thing, the jury temporary, and serving only a partial purpose. In this case, defendant consented for the jury to go and visit the car, and the complaint that for about a minute he was excluded from it is groundless.

3. If there was technical error in allowing the medical expert to give his opinion as to the position of the arm of the deceased when shot, it could work no injury to defendant, because the facts were proven as to the locality of the wound and the ball, and were not denied. There is no reversible error in the record, and I submit the evidence shows a clear case of murder—that defendant shot deceased when the latter was not looking at him, and that no other verdict could be reasonably expected.

Argued orally by *Charles T. Coleman*, for appellant, and by *A. S. Buchanan* and *Frank Johnston*, attorney-general, for the state.

WOODS, J., delivered the opinion of the court.

1. The action of the court below in permitting the medical expert, introduced by the prosecution, to state the position of the arm and hand of the deceased at the time the wounds in the arm and body were inflicted, and, also, to give his opinion as to whether the bullet-hole in the side of the railway-car was in range with the two bullet-holes in the head of the deceased, is strongly assailed by counsel for the accused.

The inquiries were as to matters concerning which the medical expert had no scientific knowledge. He had made a *post mortem* examination of the deceased, and he had laid before the jury the results of his examination. He had shown the place of entrance and of exit of the bullet fired through the head of the deceased, and he had shown its course and range through the head; and then his testimony, as to the course and range of the bullet, should have ended. The flight and range of the bullet after leaving the head could only be established by inferences, conclusions drawn from proven facts, and these conclusions are based on the common experience and knowledge of mankind, and not upon any medical or scientific learning. Any man was as capable of forming an opinion as the expert. Given three holes, made by one bullet, in fixed objects, and the common experience and knowledge of mankind is all that is required to draw the proper conclusion as to the range of the missile. One man could establish the course of the bullet's flight as well as another. The physical facts laid before the jury, it was the province of that body to draw the conclusions for itself. The facts shown, the jury needed no expert opinion on which to rest its own. In matters of common knowledge and experience of the character we are considering, and, when scientific opinions are not required, or, indeed, possible, it is erroneous to fling the weight of a distinguished expert's opinion into the scale, with a view to having the jury adopt and act upon it, instead of forming and acting

upon its own conclusion, drawn from the established facts. The range of the bullet through the head and into the side of the car was a material matter. Placing one's self at the point where the bullet entered the side of the car, and looking along the invisible line that the bullet traveled, and noting the marks of its exit and its entrance in the head of the deceased, we can fix the unseen pathway of the missile with more or less accuracy, and, prolonging our gaze along this pathway beyond the head of the deceased, we can fix the position of the accused when he fired the fatal shot; and this is precisely what was sought to be established for the jury by the opinion of the expert witness. The jury knew the proven facts as well as the witness; they both knew them as they had learned them from others; and the jury was as capable of drawing the proper conclusion from the proven facts as the expert. The prosecution had no right to substitute the expert's opinion for that of the jury.

These remarks apply equally to the effort to have the jury take the opinion of the expert as to the position of the arm and hand of the deceased when he was shot in the body. The facts from which the expert drew his conclusion, and on which he based his opinion, were relevant to a subject-matter of common knowledge, and the jury needed no opinions from experts, or others. They had all the facts, and they should have been permitted, uninfluenced by opinions from others, to draw their own conclusion and form their own opinion.

The witness, McDade, was told to give the jury his opinion as to the range of the bullet which passed through the head, taking as the factors in making up his opinion, the proven facts as to the position of the deceased, the places of entrance and exit of the ball in the head, and the hole made by the bullet in the side of the car. Why permit the *one* man to draw the conclusion and form the opinion when *twelve* had been selected and sworn to do that very thing?

2. It is contended by the counsel for appellant that there was error in the court's action in allowing the jury to visit

and inspect the railway car in which the homicide occurred, in the absence of the accused. It is replied by counsel for the state that, admitting the right of the accused to be present, this right was not denied him. It is sufficient to say that the *right* was denied, but, as an act of grace on the part of the counsel for the state, the court then gave the accused permission to accompany the jury. But the officer having the jury in charge, through an unaccountable misapprehension of the court's final ruling on this point, forbade the accused entrance to the car, and only yielded the privilege when one of the counsel for the prosecution intervened and rectified his misapprehension. The jury was only in the car two or three minutes, and during a part of that brief space of time the accused was not permitted to be present. Under these indisputable facts, it cannot be said that the accused was not denied the right (if it was a right) to be present at the jury's view of the car.

Was it the right of the accused to be present when the jury visited and inspected the car? The answer to this inquiry will be found in ascertaining and determining what the purpose and object of this view was—what its nature and character was. Was it a part of the trial of the cause? Was it a step taken in the progress of trial, or was it an aimless, idle parade of the jury when not engaged in the discharge of its weighty duties as a most important part of a judicial tribunal?

Acting under the authority of § 2391, code 1892, and being of opinion that, "on the trial" of this cause, it was proper for the jury to have a view of the car in which the offense was charged to have been committed, the court below ordered the jurors to be conducted in a body, under the charge of an officer, to the car. Why are the jurors sent to the scene of the offense? Because, in the opinion of the court, it becomes proper to do so on the trial of the cause. Proper in what sense? There can be but one reply. It becomes proper in one of two views. The jury may be better able to under-

stand and apply the evidence by examining the ground or
scene of the offense, or the jury may receive evidence from
inanimate witnesses which otherwise it would not have.

Without attempting to elaborate our views on this point,
we remark that the reported cases in which some courts of
last resort have held that the prisoner was not entitled to be
present at a view of the premises on which the offense was
alleged to have been committed, for the reason that, in such
inspection, the jury is not taking or receiving evidence in the
absence of the accused, but is, during a suspension of the
trial, and while absent and separated from the court, merely
receiving impressions from silent, inanimate objects that will
enable it better to comprehend and apply the testimony
in the case, are inconsistent, and beg the question. They
assume that the court is composed of the judge, the clerk,
the sheriff, and overlook the great fact that the jury is the
right arm of the court in the administration of law. They
assert that the jury is not receiving evidence, because it is
absent from the court, and cannot take testimony except in
the presence of the judge and the accused, overlooking the
painful fact that illegal evidence may be taken, and unlaw-
ful methods may be employed for its introduction. They de-
clare that only impressions are received by the jurors on such
inspections which will enable them to understand and apply
the testimony offered. But this concedes the proposition in
dispute. Impressions are made on the mind of jurors by
dumb witnesses. They do have evidence of inanimate things.
They are receiving impressions, evidence, enlightenment
from voiceless things, call it by whatever name you will; and
they are themselves being thus made silent witnesses for or,
against the accused. They return to the court-room with im-
pressions, opinions, formed by an examination of dumb, inan-
imate witnesses, and, if erroneous impressions and opinions
have been made and formed, their hurt is beyond all cure,
for the jurors may not speak out what may weigh on their
minds, but are become themselves dumb, passive witnesses.

To say the jury cannot receive evidence by simply viewing the scene, is to insult common sense. The most convincing evidence is made by the sense of sight. The juror on the view *sees*, and thinks he knows what he thus *sees*, with all the conclusions flowing therefrom. He sees, or may see, more than a mere railway-car, or a naked room, or a piece of senseless earth; and, no matter what he *sees*, and *falsely sees*, he cannot speak, and have his mistaken conclusions corrected or removed. The impressions, the evidence made by the mute witnesses, may be more potent in fixing the jury's verdict than the living witnesses, speaking under oath to tell the truth.

Let us suppose an extreme case to illustrate the discussion— an illustration drawn from the case at bar. In the case at bar there is the evidence of two or three witnesses to the effect that there were mirrors on each side the car door, reflecting the interior of the car. Looking in these mirrors, these witnesses saw the accused coming down the car aisle in the direction of where the deceased sat. When near the deceased, he too saw the accused's reflection in the mirrors, and turned his head and threw his hand to his hip-pocket, and thereupon accused sprang back a step and fired. Now, suppose that, after the homicide, and before the view by the jury, for some reason the car has been overhauled and the mirrors removed. The jurors, we will suppose, are ignorant of such removal. They are sent by the court to make an inspection, and they see, not only where the deceased sat, and the hole made by the bullet in the side of the car, but they see with astonished and indignant eyes that there are no mirrors. They naturally conclude the witnesses who testified as to what they saw in them have committed perjury, and all their testimony is unceremoniously thrust away as unworthy of examination or consideration. And the jurors, thus themselves converted into silent witnesses, have made up a case which could never have been fabricated, if the view had been had before the whole court and in the

presence of the accused. We are only supposing a case to illustrate the proposition that the jury is receiving evidence on a view of the scene of the offense, and the illustration ' perfectly demonstrates the soundness of our view.

The constitutional right guaranteed to every person charged with crime to be confronted by the witnesses against him, will require the production of all evidence from all witnesses, animate and inanimate, in his presence. But not alone must ·all evidence be had in the presence of the accused, but it must likewise be had and taken in the presence of the court trying the case. The accused must be tried in court, before the court, and not before the jury sent out by the judge to · gather evidence away from the court, and away from the accused. The statute undertakes to confer authority upon trial courts in criminal cases to dismember the court in the midst of, and on, the trial, and to send the jury out of the presence of the court, and, in the absence of the accused, to receive impressions and draw conclusions and form opinions by means of the evidence of inanimate witnesses. As a step in the progress of the trial, the judge remains in the court-room, sends the jury out to take this testimony, and the accused is forbidden to even know what the evidence so gathered is. A trial conducted, in part, away from the place appointed for the holding of the court, in the absence of the judge and of the accused, is not that trial to which every man accused is constitutionally entitled. To the extent indicated, the law is unconstitutional.

3. It is strenuously insisted by the learned counsel for the accused that the court erred in excluding evidence of an assault made by the deceased on the accused a week or two · before the homicide was committed. We are of opinion that there was error in the court's action in this particular, but not error of which the accused can be heard to complain. If it was a case—a rare, exceptional case—in which it was proper to show a former difficulty, the court should have permitted proof of the difficulty. If evidence of the fact that

there had been a previous difficulty was admissible, then the accused should have been permitted to show the character of that occurrence. But was this one of the most infrequent, exceptional cases in which evidence of a previous difficulty was admissible? Was not the error of the court committed in letting in proof of the mere fact of the previous affair? The former difficulty does not appear to be connected with, or related immediately to, the fatal rencounter. It, as presented in the record before us, stands out as an independent, distinct transaction. It does not appear from the record that the previous difficulty was the sequel of the enmity of the deceased, or that it was made in pursuance of antecedent threats. Numerous threats of the deceased, which were made after that previous difficulty occurred, are clearly shown; but we have seen no evidence of any threats made before and leading up to that occurrence. If there had been threats of violence made by the deceased before the previous difficulty, and they had been followed up and made good when the deceased met the accused, then the proof offered to be made by the accused of the character of that difficulty might have been pertinent. It would, in that case, have shed light on the homicide. It would have illustrated the character of the deceased, and the greater or less probability of his doing again, in pursuance of his declared purpose, what he would have been shown to have done on the previous occasion, following up the threats which preceded that. It would have been more or less influential in determining the reasonableness of the apprehension of the accused that the deceased was about to do him great bodily harm, and that the danger of its accomplishment was pending and imminent, when, as the accused and two other persons swore, the deceased made an overt act as if to draw his pistol. But no threats antedating that difficulty were proved, and the admissibility of the evidence of the nature of that affair failed.

The general rule is the exclusion of evidence of previous

difficulties. There are exceptional cases, in which the accused should be permitted to show the character of the former difficulty, but this record does not disclose the circumstances making the case at bar exceptional.

*Reversed.*