# Court of Appeals.

June 7, 1898.

## PEOPLE v. MARTIN THORN.

1. TRIAL—VIEW OF PREMISES.

The view, provided for by section 411 of Code is not the taking of testimony within the meaning of the Bill of Rights. Its sole purpose and object is to enable jurors to more accurately understand and more fully appreciate the testimony of witnesses given before them.

2. SAME.

The statute has left it discretionary with the trial judge as to whether the view should be had. In exercising this discretion, he should first satisfy himself that the premises are in substantially the same condition as at the time of the commission of the crime, and the view should be taken by the jury, attended only by the officers, or persons selected by the court to exhibit the premises.

3. SAME.

By asking that the jurors be permitted to view the premises, the prisoner's counsel waived the right of himself, or the defendant, to be present.

4. APPEAL—ORDER PERMITTING VIEW OF PREMISES.

Court of appeals will not grant a new trial on the ground that justice requires it, where the jurors were not guilty of misconduct in viewing the premises or nothing occurred which was prejudicial to defendant.

APPEAL from a judgment of the supreme court in Queens county, upon a verdict convicting the defendant of the crime of murder in the first degree.

William F. Howe, for appellant.

William J. Youngs and George W. Davison, for respondent.

HAIGHT, J.—There is but little controversy with reference to the details of this crime. It is practically conceded that William Guldensuppe was murdered in a house at Woodside, in the town of Newtown, Queens county, on the 25th day of June, 1897. The chief controversy in the case arises over the question as to whether the killing was by the defendant, or by a woman named Augusta Nack, commonly known as Mrs. Nack.

It appears that Guldensuppe was occupied as a rubber in a Turkish bath house; that he was usually occupied in his business from three in the afternoon until about three o'clock in the morning, and that for some time he had been living with Mrs. Nack in adulterous intercourse. The defendant Thorn was a barber; he had rented a room of Mrs. Nack, and lived therein in the same building occupied by her. After he had occupied his room for a short time, as he says, she made love to him, and thereafter he stayed with her nights until it was about time for Guldensuppe to return, when he would leave her bed and go to his own room. This relation continued until February, 1897, when he and Guldensuppe met in her room and a fight ensued, in which Thorn was severely beaten by Guldensuppe, and obliged to go to a hospital to have his wounds dressed. Thorn then took rooms at another place, but continued to meet Mrs. Nack from time to time, and took her to various places of amusement.

The evidence tends to show that, at these meetings, the fight with Guldensuppe was talked over; that Mrs. Nack preferred the company of Thorn to that of Guldensuppe, and plans for their living together in the future were discussed. The evidence also tends to show that Thorn had made threats of getting even with Guldensuppe, and that he had supplied himself with

a pistol and a stiletto. On the 22d day of June, Thorn noticed an advertisement in a paper of a cotttage for rent at Woodside, and went there and examined the premises. On the 24th he took Mrs. Nack with him, and they together inspected the premises, and then concluded the agreement for the renting of the cottage, Thorn paying fifteen dollars for the first month's rent, and they gave their names as Mr. and Mrs. Braun. The next day, June 25th, Mrs. Nack enticed or induced Guldensuppe to visit the cottage with her, and, according to the confession of the defendant made to the witness Gotha, he, Thorn, was secreted behind a door in one of the rooms when Mrs. Nack and Guldensuppe entered, and while Guldensuppe was inspecting the premises Thorn watched his opportunity, and, when it occurred, he stepped up behind Guldensuppe and shot him in the back of the head. It appears that Mrs. Nack, who, after arriving at the cottage had gone to the toilet, then joined Thorn, and together they removed the clothing from the body and put it in the bathtub, and, whilst Guldensuppe was still breathing heavily the defendant severed the head from the body with his razor. The legs were then cut off and the body severed above the diaphragm. The defendant then went to a store and purchased some plaster of paris, and Mrs. Nack to another store and purchased some oilcloth. The head was done up in plaster of paris and wrapped in paper. The other parts of the body were done up in bundles and wrapped with oilcloth and paper. The head and some of the other parts of the body were subsequently dropped by the defendant in the East river, and the trunk was hidden in the woods at or near High bridge. Subsequently the different parts of the body were found and brought together at the morgue, with the exception of the head, and were identified as the remains of Guldensuppe.

The defendant, in his testimony, conceded that he rented the cottage, and that he took part in disposing of the remains, but claims that when he arrived at the cottage on the morning of the 25th, he met Mrs. Nack there, and that she had already killed Guldensuppe, and that he but assisted her in hiding the remains.

We do not deem it necessary or profitable to further rehearse

the details of this crime, for our examination of the evidence has led us to conclude that the question of defendant's guilt or innocence was clearly for the jury, and, so far as the merits are concerned, we have no disposition to interfere with the verdict. We have given attention to the exceptions taken upon the trial to the admission and rejection of evidence, but find none which requires the ordering of a new trial. There is but one question presented which we are called upon to consider, and that is of considerable importance and requires careful examination.

At the conclusion of the evidence taken upon the trial, the defendant's counsel requested the court to permit the jury to inspect the premises where the homicide was committed. The district attorney objected, and the court at first refused the request; but later, upon the request of the defendant's counsel, changed his ruling and made an order for the inspection of the premises, first instructing the jury that "You are not, going from the court house there, while there, or returning, to converse among yourselves, or with any one else, touching any subject relating to this case, and, in addition, I admonish you that you are not to form or express any opinion upon any subject connected with the case; and I admonish the officers that they are not to converse with the jurors, or suffer anybody to converse with them, on any matter relating to this case." An officer was then sworn, in accordance with the provisions of the Code, and the jurors were conducted to the premises. The defendant's counsel waived the right of the defendant and of himself to go with the jury to the premises, and requested that the jury go without them. The inspection of the premises was then made in the absence of the defendant. It is now contended that the inspection was part of the trial, and the taking of evidence in defendant's absence, and that it was such an error as to necessitate the granting of a new trial. This question has already received attention in the courts of a number of our sister states, and in some of the lower courts of our own state. The conclusions reached by the courts of the different states are far from uniform. In some it is held that a view of the premises where a crime has been committed is a part of the trial and

is the taking of evidence, and that it cannot be done in the absence of the defendant. In other states it has been held to be no part of the trial and not the taking of evidence within the meaning of the Constitution, or of the bill of rights.

The argument presented in the cases holding that a view of the premises is improper without the presence of the defendant is to the effect that the view of the jurors cannot be considered an idle ceremony, but must be deemed to have been made for a purpose, and taking place under an order of the court, is a part of the trial; that the jurors in making such inspection necessarily made use of their sense of sight, and, although no word may be spoken, they draw conclusions from the silent, inanimate objects which they see; that these objects are mute witnesses with which the defendant must be confronted. This view was adopted in elaborate opinions by Justices LEARNED and BOCKES, in the General Term, third department, in the case of People v. Palmer, 43 Hun, 401. In the case of People v. Bush, 68 Cal. 623, 630, the same view was adopted, but by a divided court. In the case of State v. Burtin, 24 La. Ann. 46, it was held that an examination of the premises where the crime was committed could not properly take place in the absence of the judge and the defendant; but in that state there was no statute authorizing a view of the premises. In the case of Benton v. State, 30 Ark. 328, 350, it was held that the accused should be permitted to be present at the view. In the case of Foster v. State, 70 Miss. 755, 763, the jurors were permitted to visit and inspect a railway car in which the homicide occurred. The right of the accused was first denied him by the court, but, as an act of grace on the part of the counsel for the state, the court gave the accused permission to accompany the jury. It was held that the judge erred; that the accused had a right to be present, and that it was not a matter of favor. In the case of Rutherford v. Commonwealth, 78 Ky. 639, the court held that, in a trial for homicide, the prisoner and the judge should attend the inspection of the premises by the jury, but it not appearing that the defendant was prejudiced by the inspection, the court refused to reverse the judgment.

In the case of Sasse v. State, 68 Wis. 530, 537, it was held

that the knowledge acquired by the jury in inspecting the premises was to enable the jurors better to understand the evidence on the trial; that it was not to obtain original testimony in addition to, or contradiction of, or independent of, the evidence given in court, but to obtain a more perfect knowledge of the evidence, and to enable the jury better to understand and consider it, in the light and by the aid of the insensible objects and localities disclosed by the view.

In the case of Carroll v. State, 5 Neb. 31, it was held that whenever the court makes an order that the jury view the place where a crime has been committed, such view should be made in the presence of the prisoner, unless he waives the privilege.

In Shulkar v. State, 105 Ind. 289, the court, on motion of the defendant's counsel, sent the jury to inspect the premises where the homicide was committed, and did not direct that the defendant should be present during the inspection, but no request was made by the defendant that he should be allowed to be present, nor was there a suggestion to the court that he desired to accompany the jury. The statute in that state permitted the inspection of the premises only upon the consent of the parties. This consent was given in open court, and the inspection took place in the absence of the defendant. Upon review it was contended that the inspection was a part of the trial, and was the taking of testimony, ELLIOTT, J., in delivering the opinion of the court, says: "This statute does not intend that the view of the premises where a crime was committed shall be deemed part of the evidence, but intends that the view may be had for the purpose of enabling the jury to understand and apply the evidence placed before it in the presence of the accused in open court. Deferring for the present a consideration of the authorities and reasoning on practice, we shall have no difficulty in concluding that the statute does not intend that the inspection of a place where a crime was committed shall be taken as evidence. It cannot be seriously doubted that evidence can only be delivered to a jury in a criminal case in open court, and unless there is a judge, or judges, present there can be no court. The statute

does not intend that the judge shall accompany the jury on a tour of inspection; this is so obvious that discussion could not make it more plain. The jury are not, the statute commands, to be spoken to by any one save by the officer and the person appointed by the court, and they are forbidden to talk upon the subject of. the trial. It is the duty of the jurors to view the premises, not to receive evidence, and nothing could be done by the defendant, or by his counsel, if they were present, so their presence could not benefit him in any way, nor their absence prejudice him. The statute expressly provides who shall accompany the jury, and this express provision implies that all others shall be excluded from that right or privilege. It is quite clear from these considerations that the statute does not intend that the defendant or the judge shall accompany the jury, and it is equally clear that the view obtained by the jury in not to be deemed evidence."

In the case of Close v. Sann, 27 Iowa, 503, it was held that the object of the statute which provides for the inspection of the premises in certain cases by the jury, was to enable them the better to apply the testimony disclosed on the trial, and not to base their verdict in any degree upon such examination itself, or become silent witnesses as to facts in relation to which neither party has an opportunity to cross-examine.

In the case of State v. Moran, 15 Oregon, 262, the jury was allowed to view the premises where the homicide was committed, with the consent of the parties, but in the absence of the prisoner. After conviction, when the prisoner was called for sentence, objection was interposed, for the reason that the jury had been allowed to view the premises where the crime was alleged to have been committed without his presence. The objection was overruled and sentence was pronounced. It was held no error upon the case of State v. Ahlee, 8 Ore. 214.,

In the case of Queen v. Martin, L. R. (1 Crown Cases) 378, BOVILL, C. J., in delivering the opinion of the court, says. "The first objection made to the conviction in this case is that the jury were permitted to view the place in which the offense was alleged to have been committed after the summing up of

the learned judge.    We are unanimously of opinion that there was no irregularity in allowing such a view.    It is always entirely in the discretion of the court to allow a view or not, though such precautions as may seem to the court necessary ought to be taken, to secure that the jury shall not improperly receive evidence out of court.'

In the case of Hopt v People of the Territory of Utah, 110 U. S. 574, the supreme court of the United States held that a trial in Utah by triers appointed by the court of challenges of proposed jurors in felony cases must be had in the presence as well of the court as of the accused, and that such presence cannot be dispensed with.

In this court it has been held that a person accused of crime is entitled, as of right under the Constitution, to a trial by jury, which consists of twelve men, and that this right cannot be waived, People ex rel. Murray v. Justices of the Court of Special Sessions of the City and County of New York, 74 N. Y. 406; Cancemi v. People, 18 id. 128; that the court in a felony case cannot instruct the jury in the absence of the defendant or render judgment against him.    People v. Winchel, 7 Cow. 525; People v. Perkins, 1 Wend. 91; Eastwood v. People, 3 Parker's Crim. Rep 52.

In the case of People v. Bragle, 88 N. Y. 585, it was held that the temporary absence of the defendant from the court room during the cross-examination of a witness by his own counsel, to send a telephone message, where the room in which the telephone was located opened from the court room, was not such an absence as to require a new trial.

In the case of People v. Johnson, 110 N. Y. 134, the jury was allowed to view the scene of the crime without the oath required by the Code having been first administered to the officer attending them, and, during such view, the jurors received information from the officer in charge as to the location of the cells occupied by the prisoner attempting to escape. All of these facts were known to the prisoner's counsel, but were not brought to the attention of the court during the trial. The motion, made subsequent to the conviction, to set aside the verdict, was denied.    In this court it was held no error;

that the court had authority to permit the jury to take the view, and that the omission of the oath of the officer was an irregularity merely, which could be and was waived by the defendant.

In the case of People v. Gallo, 149 N. Y. 106, the jurors were permitted to visit the saloon of Lorenze, where the homicide was said to have taken place, and were there treated by him with cigars, and he was permitted to explain to the jurors, through an interpreter, the condition of the room on the night of the homicide, and the roll of paper upon which the defendant claimed to have found the pistol which was in his possession; that its then condition was such.that the pistol could not have rested upon it, as stated by the defendant in his testimony. We held that the taking of these statements from Lorenze, out of court, was improper and a misconduct on the part of the jurors.

In the case of People ex rel. Munsell v. Court of Oyer & Terminer, 101 N. Y. 245, Munsell, one of.the jurors, during the progress of a trial of an indictment for assault with intent to kill, went to the scene of the affray for the purpose of acquainting himself with the locality. For this act he was adjudged guilty of contempt of court and was committed. In this court the conviction was reversed upon the ground that no contempt had been shown.

While inspection of premises has been common and repeatedly recognized by this court as proper, it is apparent that the question now presented has never been fully considered or passed upon by us.

Article six of the Constitution of the United States contains the bill of rights in substantially the same language as that incorporated in our Code of Criminal Procedure. But it has been held that these provisions of the Constitution have reference only to prosecutions in the Federal courts, and that they do not apply to prosecutions of crimes within the jurisdiction of State courts. Withers v. Buckley, 20 How. (U. S.) 84; U. S. v. Cruikshank, 92 U. S. 542; People v. Fish, 125 N. Y. 136, 151.

The Constitution of our state provides that in a trial " the

party accused shall be allowed to appear and defend in person and with counsel as in civil actions. No person shall be subject to be twice put in jeopardy for the same offense, nor shall he be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty or property without due process of law." Section eight of the Code of Criminal Proceedure provides that "in a criminal action the defendant is entitled—

"1. To a speedy and public trial;

"2. To be allowed counsel as in civil actions, or he may appear and defend in person and with counsel, and

"3. To produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court. except that where the charge has been preliminarily examined before a magistrate," etc.

Section 356: "If the indictment be for a misdemeanor, the trial may be had in the absence of the defendant, if he appear by counsel; but if the indictment be for a felony, the defendant must be personally present."

Section 411. "When, in the opinion of the court, it is proper that the jury should view the place in which the crime is charged to have been committed, or in which any material fact occurred, it may order the jury to be conducted, in a body, under charge of proper officers, to the place, which must be shown to them by a judge of the court, or by a person appointed by the court for that purpose."

Section 412: "The officers, mentioned in the last section, must be sworn to suffer no person to speak to or communicate with the jury, nor to do so themselves, on any subject connected with the trial, and to return them into court without unnecessary delay, or at a specified time."

Sections 411 and 412 were evidently designed by the legislature to aid the jury in arriving at a correct result. It is a well-understood fact that an individual familiar with the locality can better and more accurately understand the testimony of the witnesses describing scenes occurring therein than a stranger who is dependent entirely upon the description given by the witnesses. A criminal trial is to ascertain the facts, and

every act of the legislature designed to aid the jury in this direction should receive a liberal and reasonable interpretation to the end that this purpose may be accomplished.

If, as is contended, the view of the premises by the jurors is a part of the trial or is the taking of testimony upon the trial, it may be that the view could not take place in the absence of the defendant; but we are not prepared to concede that the view is a part of the trial or is the taking of evidence. The trial could not take place in the absence of the judge, jury and defendant, and yet the provision of the Code does not require the judge to attend upon the jury during the time that it is inspecting the premises. Courts are appointed to be held at the places designated by statute. In this case it was at the court house of the county. Courts may be adjourned to be held in other places if a malignant, contagious or epidemic disease exists at the place where the term of a court of record is appointed to be held, but nothing has occurred in this case necessitating the transfer of the trial from the court house to a cottage in Woodside. It, therefore, seems clear that the legislature never contemplated that the view of the jurors provided for should be in court and a part of the trial.

Is it the taking of evidence? The provision in the bill of rights that the accused shall be confronted with the witnesses against him was designed to prevent secret trials in which the accused was often arrested and executed without a hearing and without any knowledge as to who were his accusers, or the evidence upon which they relied. The provision had reference to the persons who should testify against him.

It is doubtless true, as claimed, that jurors may draw inferences from the objects which come under their vision. While mute, inanimate objects may, in one sense, be witnesses, are they witnesses within the contemplation of the Constitution and the statute? We think not. If seeing the locality is the taking of evidence in one case, it must be in another. If viewing the locality during the trial is the taking of testimony, why is not the seeing of the locality before the trial the taking of testimony? It often occurs that crimes are committed in public places, familiar to the greater portion of the inhabitants of a

county, where it would be difficult, if not impossible, to procure a jury which had not seen the locality time and time again. Such persons having seen the locality, and being familiar with it, could, if they were sitting upon a jury, readily determine whether a witness was accurately describing the place. Their knowledge of the locality would constantly operate upon their minds during the trial in determining the force and effect which should be given to the testimony. If seeing is the taking of evidence, it would follow in every case that a juror who had seen and was familiar with the locality would be incompetent to sit as a juror, for he would have taken testimony in the absence of the accused, with which he had never been confronted, or had an opportunity to explain.

To illustrate further: In front of this Capitol, in the city of Albany, there is a park. On the opposite side of the park stands the court house. Should a felony be committed in the park, the accused could not well be brought to trial, for the reason that every juror summoned in the case necessarily would see and view the locality every time he entered or departed from the court house.

These are some of the absurd results which would naturally follow the construction contended for. Our minds do not incline that way. Every reasonable safeguard provided by the Constitution, or the Bill of Rights, for the protection of persons accused of crime, should be scrupulously recognized and preserved by the courts; but we should not attempt to deprive the jury of the means of determining the truth or falsity of the testimony of witnesses, or to so surround criminal trials with technical and profitless restrictions as to make it difficult, if not impossible, to reach a verdict that can be upheld. It appears to us that the more rational and reasonable construction to be given to the provisions of the section is that the view is not the taking of testimony within the mean- of the Bill of Rights; but that the sole purpose and object of the view is to enable the jurors to more accurately understand and more fully appreciate the testimony of witnesses given before them.

The wise and beneficent object of the statute should not be

lost sight of. Trial judges should be careful to see that the purpose of the statute is not departed from and the view used for other purposes than that contemplated. The statute has left it discretionary with the trial judge as to whether the view should be had. In exercising this discretion, we think that he should first satisfy himself that the premises are in substantially the same condition as at the time of the commission of the crime under investigation, and that the view should be taken by the jury attended only by the officers or persons selected by the court to exhibit the premises. If the defendant and his counsel and the district attorney wish to accompany the jury, we think it but reasonable that they should be permitted to do so, but the jurors should be carefully guarded, and no one permitted to speak to them, in violation of the provisions of sections 412, or other misconduct premitted. If the jurors be permitted to converse with outside persons with reference to the particulars of the crime, or should make inquiries with reference to material questions at issue, it would be misconduct within the Gallo Case *supra* which this court would feel bound to consider upon a review.

As we have seen, the prisoner's counsel asked that the jurors be permitted to view the premises, and waived the right of himself, or the defendant, to be present. If the view was not a part of the trial, or the taking of evidence, within the contemplation of the Constitution and the statute, there can be no doubt about the power of the defendant to waive his presence. People v. Johnson, 110 N. Y. 134; People ex rel. Munsell v. Court of Oyer & Terminer, 101 id. 245. Whether he could waive the right to be present if it were a part of the trial and the taking of evidence, we need not now consider.

When the judgment is of death, this court may order a new trial, if it be satisfied that the verdict was against the weight of evidence, or against law, or that justice requires a new trial, whether or not any exceptions shall have been taken in the court below. Code of Crim. Pro., section 528. We are required, however, to give judgment without regard to technical errors, defects or exceptions which do not affect the substantial rights of the parties. Section 542.

After the jury had rendered its verdict the defendant moved for a new trial upon the minutes of the court, upon the ground that the verdict was against the weight of evidence and upon exceptions taken during the trial. This motion was denied. There was no other motion made. The view ordered is not brought up by any exception taken, by any motion for a new trial based thereon, or by any motion in arrest of judgment. It is true as we have seen, that we have the power to grant a new trial if justice requires it; but in this case, as we have already shown, we find no reason for interfering with the verdict of the jury so far as the merits are concerned. It is not claimed that the jurors were guilty of any misconduct in viewing the premises or that anything occurred upon such view which was prejudicial to the defendant. We are satisfied that there is no justice in this case that requires us to depart from the well-settled practice of the court. We sit as a court of review. We review questions presented in the courts below. Had there been any reason for granting a new trial, growing out of the view of the premises by the jurors, the trial court had the power to grant such relief, but it was not asked for. Had it been, a review by this court, possibly, would not have been necessary. As it is, we are asked to reverse upon grounds that were never raised nor considered below.

The judgment and conviction should be affirmed, and the sentence of death originally imposed in this case should be carried into execution, in the form prescribed by statute, during the week to be hereafter named in the order.

O'BRIEN, J. (dissenting.) It is the settled law of this state that a person on trial for a capital offense can do nothing to prejudice his legal rights or to procure his own conviction. The prosecution cannot procure a lawful conviction without observing all the forms of law, including the observance of every right of the accused, whether he demands the right or attempts to waive it. When an accused person is in custody and in the power of the law he is legally incapable of waiving any of his rights, not even by a plea of guilty in open court. Code Crim. Pro. § 332. He cannot be legally tried without being present at every stage of the trial. When, in this case, the jury was permitted

to inspect the house and premises where it was alleged that the crime was committed, the defendant had the right to be present. The view of the place by the jury was evidence in the case presented to the mind through the senses. It was so treated by the learned trial judge in his charge. It was substantially a part of the trial, and it is only because such a view may tend to enlighten the mind with reference to the issues of fact in the case that such a proceeding can have any place in criminal procedure. If it was the right of the accused to be present he could not waive that right any more than he could the right to be present at any other stage of the proceedings. The case is not changed by the fact that the order for a view of the place was in the discretion of the court. The defendant's right to be present is fundamental and does not rest on any discretionary power. If the court concludes to exercise this discretion it must see to it that the rights of the accused are observed by being present, whether he demands that right or attempts to renounce it. As I read the authorities they are all one way and against the contention of the People on this question. Cancemi v. People, 18 N. Y. 128 ; Maurer v. People, 43 id. 4 ; Messner v. People, 45 id. 1 ; People v. Palmer, 43 Hun, 401 ; Hopt v. People, 110 U. S. 575 ; People v. Bush. 68 Cal. 630 ; Foster v. State, 70 Miss. 763.

Hence I conclude that the conviction in this case was not in conformity with the law of the land and there should be a new trial.

PARKER, Ch. J., GRAY, MARTIN and VANN, JJ., concur with HAIGHT, J., for affirmance ; BARTLETT, J., concurs with O'BRIEN, J., for reversal.

Judgment and conviction affirmed.