# PRICE *v.* THE UNITED STATES.

CRIMINAL LAW; EVIDENCE; PRACTICE; ARGUMENT TO JURY;
VIEW BY JURY; SENTENCE.

1. Where in the trial of a person accused of larceny a detective of many years' experience testified, in response to a question by the prosecution whether during that time he had had much or little experience in the detection and arrest of criminals, that he had had much experience, and had known the defendant twenty years and had seen him on the day of the larceny, the question will not on appeal be held objectionable as involving an implied attack or reflection upon the character of the accused of a criminal nature.
2. While it is the right of a person accused of a crime to refrain from becoming a witness for himself, and his failure to testify on his own behalf can not properly be commented upon by counsel for the prosecution, the latter has the right to comment to the jury upon a failure of the accused to account for his whereabouts at the time the crime was committed.
3. Where objection is made on behalf of the accused, in a criminal case, to remarks of the district attorney in his argument to the jury, and he immediately makes a disclaimer of any such meaning as is attributed to his remarks by the defense, and the court gives specific instructions to the jury to disregard any such meaning, there is no error in a ruling of the trial court overruling a motion by the defense to withdraw a juror and continue the case.
4. The action of a trial court in a criminal case in allowing the jury to view the premises where the crime was alleged to have been committed in the absence of the accused or his counsel but without objection on his or their part, can not properly be assigned as error on appeal where no objection or exception was reserved at the trial to such action, and the only objection made in the trial court was made on a motion for a new trial.
5. *Quaere*, whether a view by the jury in a criminal case of the scene of the crime, is a part of the trial, or the taking of evidence, within the meaning of the Federal Constitution and statute providing that those accused of crime shall be confronted by the witnesses against them, or is only a means of enabling the jury to better apply the evidence of witnesses testifying in court.

6. Under a statute providing that every person convicted of larceny shall suffer punishment by imprisonment in the penitentiary for not less than one nor more than three years, it is not error for the trial court in sentencing a convicted person for three years, to date the period of imprisonment from his arrival at the penitentiary and not from the date of sentence.

No. 866. Submitted February 9, 1899. Decided April 4, 1899.

HEARING on an appeal by the accused from a judgment of conviction and sentence by the Supreme Court of the District of Columbia on the verdict of a jury in a prosecution for larceny. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Abram J. Rose* and *Mr. Andrew A. Lipscomb* for the appellant:

1. The court erred in the admission of evidence of the witness Flinder objected to by the defendant. It is a maxim of the law that every man is presumed to be innocent until he is proved to be guilty, and that it is not competent for the prosecution to give any proof of bad character of the defendant unless he initiates that inquiry by offering evidence of good character. *Commonwealth* v. *Webster,* 59 Mass. 295–325; *State* v. *Hull,* 18 R. I. 207; *State* v. *Thurtell,* 29 Kans. 148; *State* v. *Lapage,* 57 N. H. 245; *State* v. *Creson,* 38 Miss. 372; *People* v. *White,* 14 Wend. 114; *Fletcher* v. *State,* 49 Ind. 124; *State* v. *Kabrich,* 39 Iowa, 277; *People* v. *Fair,* 43 Cal. 137; Russell on Crimes, Vol. 3, p. 301.

The admission of this evidence was highly prejudicial to the defendant. The evidence being wholly circumstantial, the presumption of good character, to which the defendant was entitled, was of the utmost importance to him. He elected to rely upon that presumption and offered no evidence as to his character.

2. The view of the premises where it was alleged the larceny was committed in the absence of the defendant was prejudicial error requiring a reversal of the judgment. The authorities are clear to the effect that in prosecutions for

felony, the defendant must be present at every step of his trial, and that no consent of his, nor of counsel, can waive his right in that respect. Const. U. S., Art. 6; *Lewis* v. *United States*, 146 U. S. 370; *Hopt* v. *Utah*, 110 U. S. 574.

The view of the premises by the jury, in the absence of the defendant, was a violation of his constitutional right to be present at the trial, and to be confronted with the witnesses against him. *People* v. *Gallo*, 149 N. Y. 106; *Maurer* v. *People*, 43 N. Y. 1; *State* v. *Bertin*, 24 La. Ann. 46; *Foster* v. *State*, 70 Miss. 755; *People* v. *Bush*, 68 Cal. 623; *Benton* v. *State*, 30 Ark. 328–350; *Rutherford* v. *Commonwealth*, 78 Ky. 639; *Allen* v. *Commonwealth*, 86 Ky. 642; *State* v. *Myrick*, 38 Kans. 238; *Hames* v. *State*, 113 Ala. 674; *Bond* v. *Commonwealth*, 83 Va. 581; *People* v. *Doyle*, 58 Hun, 535.

That it is a proceeding in the trial will hardly admit of discussion (Cooley's Const. Lim. [6 Ed.], 388), nor can it be successfully contended that viewing the premises is not taking evidence.

The cases of *People* v. *Thorn*, 156 N. Y. 286, and *Schular* v. *State*, 105 Ind. 289, are distinguishable from this: (1) Because there was a statute expressly authorizing a view of the premises; and (2) because they were expressly made under the provisions of the State laws, and not under the Federal Constitution.

The dangers to the interest of a person charged with crime in allowing a view of the premises in his absence are exceedingly great, and present the most cogent reasons for denying the legality of such a proceeding. In this case, although taken to the premises in the custody of a sworn officer, it was sworn by a disinterested party that while there one of the jurors drew a rule from his pocket and proceeded to take several measurements in and about the cashier's desk in the café, and that during the taking of the measurements he was in conversation with his fellow jurors, and passed his rule to one of them, who also took several measurements with it.

The constitutional rights of a person accused of crime are deemed sacred by the courts, and their motto is "*obsta principiis.*" 1 Burr's Trial, 158–159; 2 Story on Constitution, Sec. 1938; *Boyd* v. *United States,* 116 U. S. 616.

3. The sentence of the defendant by the court is both ambiguous and in excess of its power.

*Mr. Henry E. Davis,* United States Attorney for the District of Columbia, and *Mr. John E. Laskey,* Assistant Attorney, for the United States:

1. It is denied that a view is a step in the trial or that a defendant may not waive his right to be present at such view, and it is insisted that the absence of a defendant under such circumstances is not a violation of his right to be present at the trial and to be confronted with the witnesses against him.

As against the cases cited by the appellant, the attention of the court is asked to the following: *People* v. *Bonney,* 19 Cal. 427; *State* v. *Ah Lee,* 8 Oregon, 214; *State* v. *Moran,* 15 Oregon, 262; *Carroll* v. *State,* 5 Neb. 31; *State* v. *Adams,* 20 Kans. 311; *Warner* v. *State,* 56 N. J. Law, 686; *State* v. *Cucuel,* 31 N. J. Law, 249; *Schular* v. *State,* 105 Ind. 289; *People* v. *Johnson,* 110 N. Y. 134; *People* v. *Thorn,* 156 N. Y. 286; *Com.* v. *Van Horn,* 41 Atl. Rep. 469; *Queen* v. *Martin,* L. R., 1 C. C. 378.

2. That the constitutional right of the defendant to be confronted with the witnesses against him was not infringed, appears from the briefest consideration of what is meant by the word witness. A witness is thus defined: "A witness is one who appears before a court, judge or other officer, and is examined under oath or affirmation as to his knowledge of matters undergoing judicial investigation." 29 Am. & Eng. Encyc. of L. 533. "A witness is one who gives evidence in a case before the court." *Barker* v. *Coit,* 1 Root (Conn.), 225. "A witness is one who being sworn or affirmed according to law deposes as to his knowledge of the facts in

issue between the parties to the cause.   The word witness is
a most general one, including all persons from whose lips
testimony is extracted to be used in any judicial proceeding."·
*Bliss* v. *Shuman,* 47 Me. 251.

Mr. Chief Justice ALVEY delivered the opinion of the
Court:

The accused, John Price, the appellant in this case, was
indicted and put on trial in the court below, charged with
stealing, taking and carrying away, certain silver certificates
issued by the United States, amounting in the aggregate to
the sum of $1,250, the property of the Metropolitan Railway
Company.   The time of the commission of the crime, as
alleged, was the 30th day of March, 1897, and the place the
Vatoldi Café, between E and F streets on the west side of
Ninth street, in the city of Washington.   The indictment
contained two counts, but the attorney for the Government,
at the trial, elected to reply upon the first count only.   The
accused interposed a plea to the jurisdiction of the court to
try him upon the ground that he had been extradited, under
process, and brought from the State of New York, where he
was arrested, to this District, to answer to and to be tried
upon another and a different indictment.   But upon demur-
rer, the plea was held to be insufficient, and the demurrer
was sustained, and the accused was required to plead to the
indictment; and this he did by entering the plea of not
guilty.   The ruling of the court in respect to the plea to
the jurisdiction of the court is not assigned as error on this
appeal, and has not been urged here as affording any ground
for bringing into question the legality of the trial below, it
being conceded that the question attempted to be raised by
the plea to the jurisdiction was concluded by the decision
of the Supreme Court of the United States, in the case of
*Lascelles* v. *Georgia,* 148 U. S. 537.   The trial proceeded
upon the plea of not guilty, and the accused was convicted
upon the first count of the indictment, and was sentenced to

imprisonment in the Ohio penitentiary for three years, to take effect from the date of his arrival at the penitentiary.

For all purposes of the decision of the questions presented on this appeal it is not necessary to do more than to state generally the principal facts of the case, as they are disclosed in the bill of exception; and those facts are, that on March 30, 1897, a party named Babendrier, the paymaster of the Metropolitan Railroad Company of this District, was robbed by a thief, supposed to be the accused, at the Vatoldi Café, in the city of Washington, of a satchel containing between sixteen and seventeen hundred dollars, of which at least one thousand or twelve hundred dollars were proved to be in five-dollar silver certificates. The satchel was taken from a place of deposit near the door of the lunch room of the café, while Babendrier was at a table in the room taking his lunch. The evidence produced by the prosecution to convict the accused of the crime was circumstantial in its nature, no witness having seen him actually take the satchel from its place of deposit. Much of the evidence produced was directed to the identification of the accused with a party seen in the immediate vicinity of the place from which the satchel was taken, and seen going out of the door with a satchel in his hand, and who is supposed to be the thief. There were several witnesses who testified to the identification of the accused with the party thus seen.

In the course of the trial there was a question raised, and ruled upon by the court, as to the legality of a question propounded to a witness by the attorney for the Government; also a question was raised by the counsel for the accused as to certain comments indulged in by the district attorney, in the course of his argument to the jury, supposed to be prejudicial to the accused. There is also a question attempted to be raised, though not by any exception taken at the trial, upon the action of the court in allowing a view by the jury of the place where the theft was committed, in the absence

of the accused and of his counsel; and there is also a question raised by assignment of error, as to the legality of the sentence imposed upon the accused. These several matters are assigned as grounds of error in the trial below.

1. After examining quite a number of witnesses on behalf of the prosecution, for the purpose of identifying the accused with the taking of the satchel from the lunch room at the café, the attorney for the Government called a witness by the name of Flinder, who stated that his experience as a detective ran from 1871. He was then asked by the district attorney this question: "During that time have you had much or little experience in the detection and arrest of criminals?" To this question the counsel for the accused objected as being "immaterial, irrelevant and incompetent." But the objection was overruled by the court, and an exception was taken by the accused. The witness then proceeded with his testimony, and said:

"Much experience, in Baltimore City and also in Washington. I know the defendant, John Price. I have known him 20 years. There have been intervals between the times I saw him. I saw him quite often in 1879, 1880 and 1881. Then I did not see him again for some years. I saw him once on the elevated railroad train on Third avenue, I think, maybe five or six years ago. Then I did not see him again until I saw him in Washington. My acquaintance is such that I have been on speaking terms with him in the past. I have had conversations with him a good many times. I remember the day on which a robbery is said to have taken place at the Vatoldi Café, in this city, on March 30, 1897, when the paymaster, Mr. Babendrier, was reported to have been robbed. I saw Price that day on the corner of Ninth and F streets. It must have been shortly after 10 o'clock. I can only judge from the time I left the Bottlers' Exchange in my wagon. I had several places to stop that morning, and, of course, I did not keep record of the time. I know it was after 10 o'clock, but I could not say how long.

I caught sight of Price crossing the car tracks on the corner
of Ninth and F streets, the north side of the F street track,
crossing the Ninth street track going west." The witness
stated further: "I next saw Price in New York; I think in
July, 1897. I was summoned to appear before the United
States commissioner there to identify Price; to see if he was
the man I saw in Washington. I went, and I identified
him then and I identify him now."

As we understand the objection to the question excepted
to, it is that the question involved an implied attack or re-
flection upon the character of the accused, of a criminal
nature. But we do not so understand the question, nor do
we think it was so understood on the trial. The district
attorney disclaims any such purpose in propounding the
question, and we think it only by a strained construction
that the question can be made to cast the reflection at-
tributed to it by the counsel of the accused. We must sup-
pose the jurors were men of ordinary intelligence, and
capable of understanding ordinary language. The question
was not intended to bring out facts in regard to the charac-
ter of the accused, nor had the question any reference to the
accused whatever; but it simply had reference to the special
capacity or qualification of the witness, acquired by long ex-
perience, to identify, and be certain of such identification,
any particular individual that he might be called upon to
identify. This facility of identification the witness had ac-
quired as a detective; and that the jury might understand
that the witness had the required faculty and expertness in
recognizing and identifying parties, the question was put in
the form we have it. If the word "criminals" had been
omitted from the question, we suppose there would have
been no objection to the question. The witness does not say
in his testimony that he identified the accused as a criminal,
nor does he say that he knew him in any criminal relation
whatever. He simply knew the accused and identified him
as John Price. It is the answer of the witness to the ques-

tion that we should look to, to determine whether there was
anything illegal and improper that should have been with-
held from the jury. The testimony given by the witness
was clearly admissible; and we do not perceive that upon
any reasonable or fair construction of the question objected
to, there was error in allowing the question to be put to the
witness, or his answer thereto.

2. In the course of the concluding argument of the district
attorney to the jury, he was replying to the argument urged
on behalf of the accused, that the evidence was all circum-
stantial, and that there was great danger in convicting on
such evidence, when he undertook to enforce his argument
by an illustration, thus:

"Take the case of a man found in the woods with his
throat cut. There is no evidence at the spot tending to
show with what sort of weapon the wound was given or
who was the person committing the act. The police go to
work; they find among the dead man's acquaintances a
man with a motive to get the dead man out of the way, but
this of itself is comparatively of little account. They next
find that the man with the motive was the owner of a weapon
with which the wound could have been inflicted; this is
something of an advance. They then set about to ascertain
the movements and the doings of that man at or about the
time the homicide is supposed to have been committed.
Gradually they involve him in such a web of circumstances
that no satisfactory account can be given of his whereabouts
at the time, and in the end, as a result of the strong web of
circumstances that has been woven about him, he is done
for, like John Price in this case, because he can not tell
where he was." To which remarks of counsel for the
United States the defendant, by his counsel, at once objected,
stating that counsel for the Government was commenting
upon the defendant's failure to take the stand as a witness
in his own behalf, which the counsel for the United States
at once disclaimed, stating that he was merely referring to

the failure of the defense to show that the defendant was elsewhere on the 30th of March than at the city of Washington. Whereupon the court interposed and said that he did not understand counsel for the United States to be referring to the defendant's failure to take the stand as a witness, but to what was in effect the absence of any proof of an *alibi*; to which counsel for the defendant replied that counsel for the United States had no right even to allude to the failure of the defense to show an *alibi*; to which, in turn, the court retorted that it did not understand the law to be that an argument might not be drawn from the failure to prove an *alibi*, and, turning to the jury told them that if any of its members understood counsel for the United States to be referring to the failure of the defendant to take the stand, what such counsel had said should be disregarded.

But notwithstanding this direction to the jury, the counsel for the defendant asked the court to direct that a juror be withdrawn and the case continued for trial; which request the court denied, and to the action of the court in the premises the defendant, by his counsel, duly excepted.

It is very clear, we think, this exception was not well taken. In the first place, we do not understand that the counsel for the Government, in what is stated to have been said by him, was referring to the failure of the accused to take the stand and testify in his own behalf. The accused was relying upon what he contended was the failure of the prosecution to show his presence at the Vatoldi Café at the time of the robbery. His failure to attempt even to show by evidence of third parties his whereabouts at the time, was certainly a strong circumstance to be commented upon in the argument. It was his right to refrain from becoming a witness for himself, and his failure to testify in his own behalf was not the subject of comment by the counsel for the prosecution. But his own testimony was not the only evidence by which he might have shown that he was at some other place than the Vatoldi Café at the time of the

theft. The party accused, by declining to become a witness for himself, does not thereby restrict the attorney for the Government from making full comment upon all the facts and circumstances of the case, except only the failure of the accused to become a witness, from which no adverse inference is allowed to be drawn.

But if it were even conceded that the remarks of the attorney for the Government were susceptible of the meaning attributed to them by the counsel for the defense, it is manifest there was no harm done, as the district attorney made full disclaimer of any such meaning, and the court gave specific direction to the jury to disregard any such meaning as was attributed to the remarks of the district attorney by the counsel for the defense. There was clearly no error in the ruling of the court embraced in this exception.

3. The next assignment of error is founded upon the action of the court in allowing the jury to be taken to the place where the larceny was committed, and to view the premises without the presence of the accused or his attorney. There has been no objection or exception taken at the trial in order to present the question stated in the assignment of error, to this court for review; and therefore we could not reverse the judgment for such error, if we were to hold it to be such. The only objection that was made in the court below in respect to this question was made upon motion for a new trial, it being one of the many grounds set forth in support of that motion. But, of course, there is no review here of the determination of the court below on motion for new trial. We shall, however, in order to show what did occur, and under what circumstances, state the facts as they appear in the bill of exception taken to other rulings at the trial.

At or about the close of the evidence on the trial, and just before a recess of the court was taken, the district attorney

14 Ct. App.—27

suggested that he thought it would be a good idea that, during the recess, the jury should go the Vatoldi Café and view the premises.    To this suggestion, a juror responded and said : " I was going to ask that myself."    Whereupon the defendant's counsel said : " I was about to make a motion that the jury take a view of the premises."    The district attorney replied : " We all seem to be harmonious—counsel on both sides and the jury ; " and the counsel for the accused said : " Let them go in the custody of a sworn officer, and counsel on both sides can be there, but we will not say a word."    To which suggestion the court replied : " I do not think it would be proper for counsel to go there." . The counsel for the defense then inquired of the court, whether the jury could take with them a diagram, to which the court · replied, they could not.    The counsel for the defense then said to the court : " Of course, your honor will instruct them to say nothing to anyone there."

The recess was taken, and during the recess the jury, in the custody of an officer, in the absence of the accused, the court, and the counsel, proceeded to the Vatoldi Café, and there took a view of the premises.    Upon the reassembling of the court, the counsel for the accused rested the case for the defense, and there was not a suggestion of an objection to the proceeding, nor an intimation that an exception was desired to be taken.    On the contrary, among the instructions asked for on the part of the accused, and which were granted by the court, are the two following :

" 1. The jury are instructed that they are forbidden to draw any conclusion whatever from the failure of the defendant to testify in his own behalf, and that in discussing the case in the jury room they have no right to even refer to it."

" 2. The jury are instructed that it is improper for any juror, in the discussion of the case in the jury room, to refer to any information he may have gained in any other way except from the testimony of the witnesses, who have been

examined in open court during the trial, *or from the view of the premises.*"

These instructions, granted at the instance of the accused, were referred to and emphasized by the learned justice in his charge to the jury, and the accused appears to have been. entirely willing to take the chances of any favorable impression upon the minds of the jury that might be made by the view of the premises; and it was only after the verdict of guilty had been rendered, that the thought seems to have occurred that it was illegal for the jury to have been allowed to take the view of the premises under the circumstances stated. But, as we have stated, the question is not before this court for decision.

In the case of *Alexander* v. *United States,* 138 U. S. 353, the ruling of the Supreme Court is directly in point with this case. There the party was accused and convicted of the crime of murder, and after trial and conviction he sought to obtain the benefit of a supposed defect or illegality in empaneling the jury, but he had failed to take the exception at the proper time, and not until after verdict, when he urged the objection in support of a motion for a new trial, which was denied. In that case, the Supreme Court held, as it had been held in several other cases, that it is the duty of counsel, in a criminal case, to seasonably call the attention of the court to any error in empaneling the jury, in admitting testimony, *or in any other proceeding during the trial by which the rights of the accused may be prejudiced,* and, in case of an adverse ruling, to note an exception; and if counsel fails in this respect, error can not be assigned for such causes.

In the opinion, the learned justice, speaking for the court, after referring to the facts relating to the supposed illegality in empaneling the jury, says: " But the decisive answer to this assignment of error is, that the attention of the court does not seem to have been called to it until after the conviction, when the defendant made it a ground of his motion

for a new trial. It is the duty of counsel seasonably to call the attention of the court to any error in empaneling the jury, in admitting testimony, or in any other proceeding during the trial by which his rights are prejudiced, and in case of an adverse ruling to note an exception." The cases of *Stoddard* v. *Chambers*, 2 How. 284; *De Sobry* v. *Nicholson*, 3 Wall. 420; *Canal Street R.R. Co.* v. *Hart*, 114 U. S. 654; and Thompson on Trials, Secs. 690, 693, 700, are cited in support of the principle stated.

The same principle is fully recognized in 'the subsequent case of *Lewis* v. *United States*, 146 U. S. 370, though in that case exceptions were duly taken to raise the questions sought to have reviewed on writ of error. See, also, the case of *Benson* v. *United States*, 146 U. S. 325.

If it were apparent that a trial and judgment of conviction had been had and rendered which were nullities, by reason of the violation of some constitutional requirement that could not be waived or departed from without at once affecting the legality of the trial and the conviction founded thereon, then, in such case, the court would, doubtless, refuse to affirm the judgment, notwithstanding there might not have been an exception taken to the illegal proceeding thus apparent, and would remand the cause for a trial *de novo*. But this is no such case as that just suggested. There are many things that pertain to a trial in the ordinary and legal course of proceeding that may be effectually waived, either by express consent, or by failure to object and except at the proper time. Many instances and precedents might be cited in illustration of this general doctrine. If it were otherwise, a great proportion of the trials that take place in the courts of the country would be subject to impeachment for invalidity, because of undue waiver of some supposed right that could have been insisted upon at the trial.

If the view by the jury had been allowed and had, without the consent and acquiescence of the accused; without

the presence of the accused and his counsel, and without the presence of the court; and an exception had been duly taken to the allowance of such view by the court, whether such proceeding could be supported by precedent or authority, would admit of great doubt. As an original question in this jurisdiction, we should be strongly inclined to hold that such proceeding ought not to be allowed, if for no other reason, because of the great liability of such proceeding to abuse, and the opening of the door to questioning the findings of the jury.

In disposing of the motion for a new trial, the learned chief justice of the Supreme Court of this District has examined with care and fullness many of the decided cases upon this subject. He has adopted and followed the rulings in certain leading cases as controlling authorities upon the subject, though such decisions were not made with direct reference to, and as the result of judicial construction of, the provision of the Federal Constitution with respect to jury trials in criminal cases. Some of the cases relied upon, however, were made under and in reference to provisions in State constitutions and statutes analogous to the provision in the Federal Constitution upon this subject. This is apparent in the cases of *People* v. *Thorn,* 156 N. Y. 286; *State* v. *Adams,* 20 Kans. 311; *Schular* v. *State,* 105 Ind. 289; *People* v. *Johnson,* 110 N. Y. 134; *Warner* v. *State,* 56 N. J. Law, 686; *Com.* v. *Van Horn,* 41 Atl. Rep. 469. See, also, the case of *Queen* v. *Martin,* L. R., 1 C. C. 378.

In these cases it was held, that the view by the jury was no part of the trial, nor the taking of evidence, within the contemplation of the Constitution and the statute; and therefore there was no constitutional right violated, by allowing the view of the premises by the jury. That the allowing of the jury to have a view of the premises was only to enable them the better to apply the evidence of witnesses, who had testified in court. And if this be so, there is no ground for the error assigned, even if an exception had

been taken; as the allowance of the view would have been simply in the exercise of the discretion of the court.

4. The fourth assignment of error has relation to the sentence that was imposed upon the accused by the court.

The statute provides that every person convicted of larceny, if the property stolen is of the value of $35 or upwards, "shall be sentenced to suffer punishment by imprisonment and labor in the penitentiary for the first offense for a period not less than one nor more than three years," etc. The court in its judgment adjudged "that for his said offense the said defendant be taken by the warden of the common jail of the District of Columbia to said jail, thence to the Ohio penitentiary at Columbus, there to be imprisoned and kept at labor for the period of three years, to take effect from the date of arrival at said penitentiary."

It is contended that inasmuch as the date of the confinement commences only from the arrival of the prisoner at the penitentiary, the court transcended its power in making the sentence longer than that prescribed by the statute. In other words, the period of imprisonment should have commenced from the date of the sentence, and not from the date that the prisoner may be delivered at the penitentiary to be confined therein. But this contention is not according to the terms of the statute. It requires some time to transfer the prisoner from the jail to the penitentiary, and by his own act, in resisting the sentence, he may cause very considerable delay; and therefore the law provides, and the sentence conforms thereto, that the period of punishment is confinement in the penitentiary three years. The term of his punishment commences only from the time that he arrives at and is imprisoned in the penitentiary.

Finding no error, the judgment appealed from must be affirmed; *and it is so ordered.*

*Judgment affirmed.*