**Norman Eldridge MINOR, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6126.**

District of Columbia Court of Appeals.

Argued April 4, 1972.

Decided June 23, 1972.

# 172

———◆———

Ed Wilhite, Washington, D. C., appointed by this court, for appellant.

Ruth R. Banks, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Paul F. Healy, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and GALLAGHER and REILLY, Associate Judges.

REILLY, Associate Judge:

The question presented by this appeal from a conviction for petit larceny[1] is whether the trial court abused its discretion in (1) denying a motion to have the jury visit a section of a department store where the theft was said to have occurred, and (2) refusing to permit a defense investigator to describe what he had seen there on the closing day of the trial. Both rulings may be considered together for they were occasioned by defense counsel's attempt to demonstrate that the structure of the premises was such that the principal Government witness could not possibly have observed some of the events about which he testified.

The witness in question was a special policeman employed as a security officer by the store to guard against shoplifting. His testimony may be summarized as follows:

On May 20, 1971, the day appellant was arrested, at about 12:15 P.M., the witness, standing behind an aperture in a partition overlooking a section of the men's clothing department, observed appellant take a pair of tan slacks from a rack, enter one of the men's fitting rooms, emerge empty-handed and move in the direction of an exit. The officer rushed into the fitting room. Not finding the slacks, he overtook appellate at the exit and asked him where the pants were. Appellant replied that they were in the fitting room "behind the mirror on the wall." The officer then asked him to accompany him back to the dressing room. The slacks were not there, whereupon appellant was placed under arrest and taken to the security office where a search of his person revealed that appellant was wearing the missing slacks under his own trousers. The officer admitted on cross-examination that there were pillars in the men's clothing area, but denied that his view of the entrance to the fitting rooms was obstructed thereby.

After the witness left the stand, the Government called the store's supervisory security officer. He testified that he was on hand when appellant was escorted to the security office and searched. He identified the tan slacks, which had been received as an exhibit, as store property found on appellant underneath his clothes.

The Government then rested, and appellant's counsel moved for a jury viewing of the scene, averring that he had personally visited this area of the store and noticed that pillars blocked the view of the fitting rooms from the aperture. The court denied the motion, pointing out that there was no conflict in the evidence before the court.

1. D.C.Code 1967, § 22-2202.

Appellant testified that he entered the men's department, selected a pair of blue pants, went to the dressing room, and tried them on. He left the pants on a hanger in the dressing room, walked out and started to leave the store when he was stopped by the special officer. He denied taking or even seeing the tan slacks at the store and added that he did not see the chief security officer until the Metropolitan police arrived to take him to the precinct station. The Government submitted the record of a prior petit larceny conviction to impeach this testimony.

Counsel for the defense then asked for a short recess in order to call an investigating witness who, at the moment, was visiting the scene of the alleged crime. Counsel represented that his testimony would be to the effect that the officer's asserted view of the fitting rooms had indeed been obstructed by a pillar. The court denied the request, and the defense rested.

Just as closing arguments were beginning, the investigator arrived. The trial court granted a defense request to place him on the stand, provided that (1) the investigator had positively ascertained the precise spot where the Government witness was watching, (2) the investigator's testimony would not be based on his observation from the floor under the aperture,[2] and (3) he had ascertained whether the location of the dressing rooms had been changed since the date of the alleged crime. When counsel indicated that the proffered witness could not meet such conditions, the court overruled his request.

Appellant's contention that these rulings were erroneous is based on the premise that while the policeman could have seen defendant take the pants from a rack and head toward the fitting room area, the pillar prevented his observing which of the two contiguous fitting rooms was used by him and therefore the officer did not in fact check the correct fitting room before accosting appellant. Had the jury been permitted to observe the asserted obstruction, appellant submits, the credibility of the principal witness against him would have been fatally discredited, thus creating an inescapable inference that his entire testimony was a fabrication.

The law of this jurisdiction grants broad discretion to a trial court when called upon to rule on a motion for a jury viewing. Hodge v. United States, 75 U.S.App.D.C. 332, 126 F.2d 849 (1942); Nuefield v. United States, 73 App.D.C. 174, 118 F.2d 375 (1941). See Price v. United States, 14 App.D.C. 391 (1899). Such ruling will not be disturbed on appeal, unless the record reveals a foundation was laid demonstrating that a viewing of the scene was essential to an understanding of the main thrust of the defense.

The record reveals that this was not the situation here, for appellant's own testimony corroborated the basic features of the Government witness' description of what he had observed through the aperture. Appellant admitted that he had indeed taken a pair of pants from the men's department and had proceeded to one of the two dressing rooms to fit them on for size. More importantly, he conceded that when stopped on his way out of the store by the special officer he had told the latter that he left the missing pants in such room, and took advantage of the officer's challenge to return to the dressing room in order to verify his story. The defense contends that appellant was taken to the wrong dressing room—its theory being that because of the obstructing pillar, the officer could not have been aware of which fitting room appellant had used. But even assuming this were so, appellant, recognizing that he was not in the right place, would certainly then have pointed out that he had used the adjoining room and suggested going there to retrieve the pants. He did not do so.

2. The prosecuting witness testified he was standing on a chair when he peered through this particular aperture.

To be sure, defense counsel had moved for a jury showing before he had called appellant to the stand. But at that point, he had not laid a proper foundation for his motion, as his statement with respect to the layout of the department store was not testimony. Thus the trial judge correctly ruled that the record developed at that time presented no conflict in evidence. Cf. Louie Hung v. United States, 111 F.2d 325 (9th Cir. 1940). Moreover, as counsel was not able to assure the court that the position of the aperture, the pillar, and the fitting rooms had not changed in the four-month interval between arrest and trial, we find no abuse of discretion.

■ Similar considerations impel us to the conclusion that the court committed no prejudicial error in refusing to let appellant call as a witness his investigator who examined the scene and arrived belatedly at the trial. Although testimony as to experiments conducted by witnesses to demonstrate ability to observe a particular situation is relevant under some circumstances, its admission is peculiarly within the discretion of the court. 22A C.J.S. Criminal Law § 645(1) (1961); 29 Am. Jur.2d Evidence § 828 (1967). A caveat is that the circumstances under which the experiment is made must be substantially similar. As we have already noted, counsel could not proffer that the locations of the crucial fixtures had remained unchanged since the date of the asserted crime.[3]

■ Appellant also argues that the jury verdict should not be permitted to stand, as the testimony of the corroborating witness —the chief security officer—to the effect that he was in the security office when appellant was searched was at odds in that respect with the testimony of the principal prosecution witness. In view of the fact that the security sanctum had both an inner and an outer room, however, this discrepancy was obviously not serious, for there was ample evidence upon which the jury could have found that the officer's account of the ultimate solution of the mystery of the missing pants was substantially credible.

Affirmed.

3. *See* Harvey's Inc. v. A. C. Electric Co., D.C.App., 207 A.2d 660 (1965) [In action for breach of contract for power failure, testimony of expert witness who inspected electrical system one and a half years after power failure, excluded], *and* Liberty Mut. Ins. Co. v. B. Frank Joy Co., 137 U.S.App.D.C. 343, 424 F.2d 831 (1970) [In suit for damages arising from break in water main, witness not permitted to testify as to cause of break because he did not investigate until the following morning].