Jeff (a slave) v. State, 37 Miss. R., 321.

## Assault and Battery with Intent to Kill.

In presumption of law, a person, in the absence of proof to the contrary, will be held to have intended the natural and probable consequences of every act deliberately done by him. But this presumption is only *prima facie* evidence of such intention. The jury should be left free to consider whether the testimony offered by the accused to rebut this legal presumption satisfies their minds of the absence of such intention.

The unlawful use of a deadly weapon by a slave, in an assault and battery on his master, employer, &c., is not of itself the same as, or conclusive evidence of, the intent to kill which constitute the gist of the offense under Rev. Code, 248, art. 59, but it is *prima facie* evidence of such intent, which will prevail, unless rebutted by the other proof in the cause.

Error to Panola circuit court. Thompson, J.

The plaintiff in error was indicted in the court below, for an assault and battery on one John Ballentine, a free white person, with intent to kill, and in resistance of legal chastisement. In the first count Ballentine was described as the master, and in the second as the employer of the plaintiff in error. To this indictment the prisoner pleaded not guilty.

On the trial John Ballentine testified that, in March, 1859, he had cause to correct the prisoner, and went into the garden where he was at work, and told the prisoner that he wanted to have some talk with him. Prisoner replied that he had done nothing to be whipped for. Witness caught him by the collar of the coat, and they scuffled, and witness struck prisoner on the shoulders with a walking-cane. The cane was a good-sized stick, which witness said he could probably have killed the prisoner with by striking him on the head. The prisoner put his hand in his pocket, and witness drew a pistol, and told the prisoner that he would be killed if he drew his knife. Witness had the prisoner by the collar with his left hand, and led him about fifteen paces, prisoner muttering all the time. Witness

told the prisoner that he would whip him or die.  About this time witness' wife came running out to where they were engaged, and witness asked her to tie the prisoner with a rope which lay near by.  Just then the prisoner ran his hand into his pocket, and was again told by witness if he drew his knife witness would kill him.  Immediately afterwards he drew his knife and commenced to cut witness.  He inflicted two slight wounds on the witness, one on his left hand, the other on the left side below the arm.  Witness then let him go, and the prisoner ran off.  The knife used by the prisoner was a common jack-knife; the blade was about three or three and a half inches long.

Being cross-examined, witness stated: "I am Dr. Laird's son-in-law; and the plantation on which I live, and on which the transaction took place, belongs to Dr. Laird.  I have lived on the place four years.  Dr. Laird lives in Memphis, Tennessee; and I have full management and control of the plantation and negroes which are near by to my house.  I have never paid anything for the use of the house and plantation, but have used them as the son-in-law of Dr. Laird.  The prisoner was one of the negroes working on the plantation.  He was sent from Memphis to dig a cistern and paint a barn on the plantation.  He had completed his work, but still remained under my control, doing whatever I directed.  He had been with me about twelve months, and was as much under my control as any of the negroes on the place, but he was subject to Dr. Laird's order at any time.  I had made no contract with Dr. Laird to hire the prisoner, and did not expect to pay for his services.'

Dr. Ellis, for the state, described the nature and extent of the wound on the side, as stated by the last witness, and said the knife struck a rib; and that the blow by which it was made was aimed in the right direction to produce death.  He could not say how much force was used in striking the blow, and could not, therefore, state whether it would have killed Ballentine or not.

This was all the evidence.

The following charges were given in behalf of the state, to wit:

1. That malice is either express or implied. It is implied from the nature and character of the weapon used; and if the jury believed from the testimony that witness Ballentine was the master or employer of Jeff, and about to inflict legal chastisement upon him, and that said Jeff resisted said legal chastisement, and made an assault and battery upon his said master or employer with a deadly weapon, and not in necessary self-defense, then they will find him guilty as charged.

2. If the jury believe, from the evidence, that Ballentine was the master or employer of Jeff, then implied malice is sufficient to convict; and that a master or employer has a legal right to inflict legal chastisement upon his slave, and the slave has no right to resist such chastisement with a deadly weapon.

3. A master is one who has possession and power of controlling or using at pleasure; and if the jury believe, from the evidence, that Ballentine was son-in-law of Dr. Laird, in whom was the title to Jeff, but that he was placed in Ballentine's possession for an indefinite time, and free of charge, and that he had possession of him, and the right to control and use him at pleasure, then Ballentine was his owner in the sense of the statute.

4. That an employer is one who employs, uses, keeps, or engages another in service; and if the jury believe, from the evidence, that Dr. Laird was owner of Jeff, and Ballentine was his son-in-law, and that Jeff had been put into his possession, and under his control, to be governed and directed by him, and that he had used and kept him in his service and employment for twelve months, then he was an employer in the meaning of the statute; and it is immaterial whether there was any money paid for the services or not, or whether there was any definite contract as to this employment.

To the giving of these instructions for the state the prisoner excepted.

The following charges were asked by the prisoner, to wit:

1. If the jury believe, from the evidence, that Ballentine was the son-in-law of Dr. Laird, and the premises upon which the said Ballentine lived, and where the assault was committed, belonged to Dr. Laird, and that Dr. Laird had sent Jeff to his

son-in-law to do certain work on said premises, and that he remained with said Ballentine under no contract, but subject at any time to Dr. Laird's order, the said Ballentine paying nothing for the time or services of the said Jeff, then Ballentine was not the master or employer of said Jeff in the meaning of the statute under which he is indicted.

2. That the intent to kill is the essential ingredient of the offense charged in the indictment; and unless the jury believe, from the evidence, that the defendant Jeff did assault the witness Ballentine with an intent to kill him, as charged, they will find him not guilty, as charged, but they may find him guilty of an assault without intent to kill.

Which charges were given, with this modification by the court, to wit:

"That if the jury believe, from the testimony in the case, that the defendant resisted with a deadly weapon the lawful chastisement of his master or employer, and in said resistance cut his master with a deadly weapon, then the law will imply an intent to kill." To which modification the prisoner excepted.

The prisoner also asked the following instructions, which were refused, to wit:

3. It devolves upon the state to prove affirmatively the specific intent charged; and if the jury believe, from the evidence, that Ballentine was the master or employer of the defendant, and that he was about to inflict chastisement upon him, and that defendant did not cut or assault Ballentine with intent to kill, but only to extricate himself from a whipping, then the jury cannot find the defendant guilty as charged, but may find him guilty of an assault without intent to kill, even though the assault may have been made with a deadly weapon.

4. If the jury believe, from the evidence, that Dr. Laird, the father-in-law of Ballentine, was the owner of the premises on which the latter lived when the alleged assault was made, and was also the owner of the defendant, and that Dr. Laird had sent defendant to do certain work and labor on said premises, and that defendant was subject at all times to the control of Dr. Laird, and that Ballentine did not have possession of defendant under any contract, and was not to pay anything for

the services of defendant, then the said witness Ballentine was not the master or employer of defendant in the meaning of the statute under which defendant is indicted.

To the refusal of these instructions the defendant excepted.

The prisoner was convicted; he moved for a new trial, which was overruled, and he excepted and sued out this writ of error.

*J. W. C. Watson*, for plaintiff in error,

Argued the case orally, and cited the following authorities to show that the specific intent to kill and murder must be proven: Bishop Cr. Law, §§ 248–514; Regina v. Cruise, 34 Eng. C. L. R., 522; State v. Jefferson, 3 Harrington, 571; Ogle v. State, 28 Ala., 693; Ike v. State, 23 Miss., 525; Morgan v. State, 13 S. & M., 242; Anthony v. State, ib., 263.

*T. J. Wharton*, attorney general,

For the state, argued the case orally, and to sustain the conviction in the court below cited, Dan v. State, 22 Ala., 23; Jim v. State, 15 Georgia, 535; Wright v. State, 9 Yerger, 343; Anthony v. State, 13 S. & M., 264.

*J. R. Chalmers*, on same side,
Filed an elaborate brief.

HARRIS, J.:

An indictment was returned against the plaintiff in error for an assault upon a white person with intent to kill, which contains two counts. The first count charges that the assault was made upon the master. The second count charges that the assault was made upon the employer; and it is first insisted in argument, by counsel for the plaintiff in error, that the proof supports neither count in the indictment, in this respect. We think the proof on this point fully sufficient.

. It is insisted, again, that the instructions asked by the state, and given by the court, were erroneous, because they, in effect, excluded from the consideration of the jury the "*intent*" with which the assault was made, which (under the statute, Code, p. 248, article 59, on which the indictment was framed) constitutes the gist of the offense.

This objection is well taken. The first charge given for the state, although, perhaps, not so intended, substantially instructs the jury, that if the plaintiff in error "made an assault and battery upon his master, or employer, with a deadly weapon, and not in necessary self-defense, then they will find him guilty, as charged," whether he intended to kill him or not, thereby excluding the plaintiff in error from the benefit of all testimony tending to rebut the legal presumption arising from the use of a deadly weapon.

In presumption of law, the plaintiff in error, in the absence of proof to the contrary, will be held to have intended the natural and probable consequences of every act deliberately done by him. But this presumption only amounts to *prima facie*, and not conclusive proof of such intention. The jury should have been left free to consider whether the testimony offered by the accused to rebut this legal presumption, or otherwise submitted to them on the part of the state, satisfied their minds of the absence of such intention.

The remaining instructions given for the state correctly expound the rules of law on the subject to which they relate.

It is, lastly, urged that the court erred in refusing the instructions asked for the accused.

We have already held that the proof was sufficient to support the indictment, charging that the assault was made on the master, as well as the counts charging it have been made on the employer. It will not be necessary, therefore, to notice further the first and last instructions refused. The remaining instructions refused assert the proposition that, notwithstanding the *prima facie* legal presumption that the accused intended to kill, arising from the unlawful assault and battery committed by him with a deadly weapon, yet the burden of proof rests on the state to establish by evidence, *aliunde*, the guilty intent. The modification to the second charge, asked by the accused, intended to assert that, in such case, the *onus* of proving some other intent, or the absence of all criminal intent, is imposed upon the accused. This modification was properly added, and the third instruction properly refused.

But, for the error in the first instruction for the state, the judgment will be reversed, cause remanded, and a *venire de novo* awarded.