(142 App. Div. 524.)

PEOPLE v. PISANO.

(Supreme Court, Appellate Division, Second Department. January 31, 1911.)

1. HOMICIDE (§ 25*)—ATTEMPT TO MURDER—NATURE OF OFFENSE.
    At common law an attempt to murder was indictable as a misdemeanor.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. § 42; Dec. Dig. § 25.*]

2. HOMICIDE (§ 25*)—ATTEMPT TO MURDER—NATURE OF OFFENSE.
    Penal Law (Laws 1909, c. 88 [Consol. Laws c. 40]) § 2, defining attempts to commit crimes, and section 261, making one indictable and punishable by imprisonment who unsuccessfully attempts to commit a crime punishable by death, comprehends an attempt to commit murder.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. § 42; Dec. Dig. § 25.*]

3. HOMICIDE (§ 25*)—ATTEMPT TO MURDER—WHEN PUNISHABLE.
    Penal Law (Laws 1909, c. 88 [Consol Laws c. 40]) § 261, makes one indictable and punishable by imprisonment who unsuccessfully attempts to commit a crime punishable by death. Section 262 provides that section 261 does not protect one who in attempting unsuccessfully to commit a crime commits another offense from being punished for the crime committed. Held, that an indictment for attempt to murder in the first degree is not prevented because the acts charged also constituted assault in the first or second degree.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. § 42; Dec. Dig. § 25.*]

4. CONSTITUTIONAL LAW (§ 46*)—NECESSITY OF DETERMINATION—FORMER JEOPARDY.
    A construction of Penal Law (Laws 1909, c. 88 [Consol. Laws c. 40]) § 262, as providing that an indictment for an unsuccessful attempt to commit an offense shall not prevent indictment for another crime, committed in the attempt, and that the people may elect for which offense

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

accused shall be tried, cannot be questioned as placing him twice in jeopardy in violation of Const. art 1, § 6, until after the finding of a second indictment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

**5.** HOMICIDE (§ 22*)—MURDER IN FIRST DEGREE—ESSENTIAL ELEMENTS.

Under Penal Law (Consol. Laws, c. 40) § 1044, to convict of murder in the first degree committed by shooting, it is necessary to show a deliberate design to effect death, or that an act was committed imminently dangerous to others, and evinces a depraved mind, regardless of human life, though without a premeditated design to effect death, or that the killing was without a design to effect death while accused was engaged in committing or attempting to commit a felony.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 35–38; Dec. Dig. § 22.*]

**6.** HOMICIDE (§ 230*)—MURDER IN THE FIRST DEGREE—INTENT—EVIDENCE.

To convict of murder in the first degree for a deliberate killing, intent to kill may be found from the use of a deadly weapon and the result produced.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 478; Dec. Dig. § 230.*]

**7.** CRIMINAL LAW (§ 26*)—OFFENSES—ESSENTIALS—OVERT ACTS.

Mere intent to commit a crime is not an offense unless accompanied by some overt act.

[Ed. Note.—For other cases, see Criminal Law, Cent Dig. § 1; Dec. Dig. § 26.*]

**8.** HOMICIDE (§ 30*)—AIDING ATTEMPTS TO MURDER—ESSENTIALS.

To convict of attempt to murder in the first degree by aiding another, it must be shown that accused aided or abetted, counseled, commanded, induced, or procured the principal to commit the overt act.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 48–51; Dec. Dig. § 30.*]

**9.** CRIMINAL LAW (§ 1166½*)—HARMLESS ERROR—VIEW OF PREMISES.

In a criminal trial the court adjourned to meet at the place of the offense where the session was resumed. No testimony was taken, and, after the view was completed, the trial was adjourned without returning to the courthouse. *Held*, that the action was irregular, but harmless error, since a view of the premises is no part of a trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3121; Dec. Dig. § 1166½.*]

**10.** COURTS (§ 74*)—PLACE OF HOLDING.

Except as permitted by Judiciary Law (Laws 1909, c. 35 (Consol. Laws, c. 30]) §§ 9, 10, a judge of a court of record cannot for his own convenience or for any other purpose hold a term of court at his residence, or any other place than that designated by statute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 255–261; Dec. Dig. § 74.*]

**11.** CRIMINAL LAW (§ 442*)—EVIDENCE—COMPETENCY—LETTERS.

In a trial for attempt to murder, threatening letters received by the intended victim were inadmissible where they were unsigned, did not purport to be written by accused, and there was nothing to connect accused with them, excepting slight testimony tending to show that accused had written the victim.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1027; Dec. Dig. § 442.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. CRIMINAL LAW (§ 699*)—ARGUMENT BY PROSECUTING ATTORNEY—DUTY OF JUDGE.

A trial judge should check improper argument by the prosecuting attorney, advising the jury of its impropriety, and warning them not to be affected thereby.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1655; Dec. Dig. § 699.*]

13. CRIMINAL LAW (§ 719*)—MISCONDUCT OF PROSECUTING ATTORNEY—ARGUMENT OUTSIDE RECORD.

Where, in a trial for assault to murder, accused denied on cross-examination that he committed and had been convicted of certain murders and other offenses, and that there had been any correspondence between governments relative to his extradition therefor, and where no further proof on the point was made, it was reversible error for the prosecuting attorney in his argument to imply that there were records contradicting accused's testimony, where the trial judge did not rebuke the prosecuting attorney on accused's objection.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1669; Dec. Dig. § 719.*]

Appeal from King's County Court.

Raffaele Pisano was convicted of an attempt to commit murder in the first degree, and he appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Martin T. Manton, for appellant.

Peter P. Smith, Asst. Dist. Atty., and John F. Clarke, Dist. Atty., for the People.

BURR, J. On November 2, 1908, Guiseppe Cacace was shot and grievously wounded by Pasquale Albano. Defendant was indicted for the crime of attempt to commit murder in the first degree, upon the theory that, although he did not fire the shot, he aided or abetted Albano, or counseled, commanded, induced, or procured him to commit the criminal act. Penal Law (Consol. Laws, c. 40) § 2.

Appellant contends that an indictment will not lie for an attempt to commit murder in the first degree when the acts charged constitute another consummated crime. There does not seem to be any exception which clearly presents this question; but as there must be a new trial, and the point was discussed by both counsel, we should consider it. At common law, an attempt to commit murder was indictable as a misdemeanor. 3 Russell on Crimes (6th Ed.) 277; 21 Cyc. 776. The section of the Penal Law defining attempts to commit crimes (Laws 1909, c. 88; Consol. Laws, c. 40, § 2), and the one providing for the punishment thereof (section 261), are each sufficiently broad to include this. The latter section provides that:

"A person who unsuccessfully attempts to commit a crime is indictable and punishable, unless otherwise specially prescribed by statute, as follows: (1) If the crime attempted is punishable by the death of the offender, * * * the person convicted of the attempt is punishable by imprisonment for not more than twenty-five years."

Under our statute there are but two crimes punishable with death, murder in the first degree (Penal Law, § 1045) and treason against the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

state (Id. § 2382). The latter crime, as distinguished from treason against the United States, is so rare that I have been able to find but one reported case in which an indictment was found, and in that case it was quashed and the prisoners discharged. People v. Lynch, 11 Johns. 549. It would seem improbable, in the absence of clear expression thereof, that the Legislature intended to include the rare and exclude the more common crime. If I understand the argument of the learned counsel for the appellant, it amounts to this: Conceding that the defendant is criminally responsible for the acts of Albano, these acts constituted a consummated crime of assault in the first or second degree. Penal Law, §§ 240, 242. Section 262 of the Penal Law declares that:

"Section two hundred and sixty-one (supra) does not protect a person who, in attempting unsuccessfully to commit a crime, accomplishes the commission of another and different crime, whether greater or less in guilt, from suffering the punishment prescribed by law for the crime committed."

Therefore the defendant in this case might be twice indicted and twice punished for the same acts, since they constituted both an unsuccessful attempt to commit murder in the first degree, and a successful attempt to commit assault in the first or second degree.

I do not think the argument sound. To learn what constitutes a criminal attempt to commit murder in the first degree, resort must be had to sections 2 and 1044 of the Penal Law. Section 261 relates to the procedure respecting and the punishment for attempts to commit crime, rather than to definitions of the acts constituting the crime of attempts. People v. Mills, 91 App. Div. 331, on page 333, 86 N. Y. Supp. 529, affirmed 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131; Pen. Code, § 686. It will be observed that the section contains the words, "indictable" as well as "punishable." I think, therefore, that the fair construction of section 262 is that, although a person may have been indicted for an unsuccessful attempt to commit one crime, such indictment will not furnish immunity from indictment for another and different crime, actually accomplished in connection therewith, and the people may elect for which crime he shall be placed on trial, and, if convicted, punished. This would seem to be in harmony with the provisions of the statute relative to an indictment for attempted crime where it appears during the trial that the attempt was not unsuccessful, but that the crime attempted was consummated. Penal Law, § 260. In such a case the court may, in its discretion, proceed with the trial under the indictment for an attempt, or discharge the jury and direct defendant to be tried for the consummated crime.

If it should be urged that such construction would involve an invasion of constitutional rights by placing a man twice in jeopardy for the same offense (Const. art. 1, § 6), it may be said that such question cannot arise until after the finding of a second indictment, and it will be sufficient to meet the question then.

The second question presented is as to the sufficiency of the evidence to sustain the verdict. If Cacace's death had resulted from the shooting, to convict of murder in the first degree it would have been necessary to establish either a deliberate and premeditated design to effect

his death, or that an act was committed imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect death, or that the killing was committed without a design to effect death by a person engaged in the commission of or in an attempt to commit a felony. Penal Law, § 1044.

If the shot had resulted fatally, to convict Albano of murder in the first degree upon the ground that the killing was committed from a deliberate and premeditated design to effect the death of the person killed, the intent to kill might have been found from the use of a deadly weapon, and the result produced. People v. Conroy, 97 N. Y. 62, 77. It may be that, if he had been indicted for attempt to commit murder, similar evidence would have been sufficient. Jackson v. State, 94 Ala. 85, 10 South. 509; Walls v. State, 90 Ala. 618, 8 South. 680; Crosby v. People, 137 Ill. 325, 27 N. E. 49; Jeff v. State, 37 Miss. 321. But mere intent to commit a crime is not sufficient unless accompanied by some overt act. People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582. The overt act in this case was the use of the pistol. To convict the defendant as a principal in this case, there must be evidence that he aided or abetted, counseled, commanded, induced, or procured Albano to commit this overt act. While there is some evidence in the case that he aided and abetted him in an effort to obtain money from Cacace by threats, I have been unable to find any evidence that would indicate that he aided, abetted, counseled, procured, or persuaded him to use his pistol to enforce compliance, or that he ever knew of such intent on Albano's part. Whether there was evidence sufficient to justify submission to the jury of the question of defendant's guilt upon the ground that when the shot was fired he was aiding and abetting Albano in the commission of the crime of extortion, whether the evidence as to such crime amounted to more than verbal threats, in which case it would not be a felony (People ex rel. Charles Perry v. Gillette, 93 N. E. 953), or whether there was evidence sufficient to bring his acts within the other definition hereinbefore referred to of murder in the first degree, we will not now consider. The case was not submitted to the jury upon any such ground, and they have never passed thereon.

We might suspend further discussion of this case but for the fact that upon the argument of this appeal counsel for the appellant pressed upon our attention three errors alleged to have been committed during the trial, each of which he contended was sufficient to require a reversal of the judgment. As there must be a new trial, we will consider these.

The first arises in connection with a view of the premises where the shooting was done. The record discloses that at the close of the oral testimony the court adjourned to meet at the premises where the shooting occurred; that the court there resumed its session, the county judge being present and presiding; that there were also present the district attorney, the defendant, his counsel, the court stenographer, and four court officers, although but three of such officers appear to have been designated to accompany the jury. No testimony was there taken, and after the view was completed, instead of returning to the

courthouse, the trial of the case was formally adjourned until the next day, and then resumed at the county courthouse. This practice was irregular. Code Cr. Proc. §§ 411, 412. But, although irregular, we do not deem it fatal error, for the reason that the view of the premises is not a part of the trial of the action. People v. Thorn, 156 N. Y. 286, 50 N. E. 947, 42 L. R. A. 368. If it were, then a session of the court was held contrary to the provisions of the statute respecting the place of trial. Laws 1909, c. 16 (Consol. Laws, c. 11) § 42; Greater New York Charter, § 1586. Except under the conditions specified in the judiciary law (Laws 1909, c. 35 [Consol. Laws, c. 30] §§ 9, 10), a judge of a court of record is not permitted, either for his own convenience or for any other purpose, to hold a term of court at his residence, or at any other place than that designated in accordance with the statute. People v. Thorn, supra, on page 297 of 156 N. Y., 50 N. E. 947, 42 L. R. A. 368. Inasmuch as this view constituted no part of the trial, the fact that the learned county judge attempted to hold a session of the court contrary to the statutory provisions was harmless error.

The second objection urged relates to the admission of certain documentary evidence offered by the district attorney. Two letters were produced which Cacace testified he had received some time subsequent to the shooting, which it is asserted contained references to a sum of $50 which Albano had previously extorted from him, and also to another sum of $100, which Albano had demanded and he had refused to pay. This refusal, it is, contended, was the cause of the assault upon him. The letters also contain threats of bodily harm if Cacace and his wife did not cease to seek information as to the identity of the persons who shot him. The letters were unsigned. They do not purport to be written by defendant. There was not the slightest evidence as to the handwriting contained therein, nor anything to connect the defendant with the authorship or sending of them, except testimony by the wife of Cacace that after her husband had left the hospital she met defendant, who said:

"'If you will not stop going about here and there and speaking against me —your husband was well warned, we have written to him. * * * It is better that you will do the right thing or guess the right thing, and that is go away from Sullivan street. * * * We have written him twice; he is well convinced of it.'"

There is not sufficient in this conversation to identify these as the letters referred to, nor is there any evidence that these were the only letters received by Cacace at about that time from any person. Defendant denied any knowledge of or connection with the letters or the sending of them. We think that they were incompetent. Nichols v. Kingdon Iron Ore Co., 56 N. Y. 618. The summing up of the district attorney is made a part of this record. The great importance which he attached to the letters as appears therefrom warns us that we cannot safely overlook so grave an error.

The third alleged error also seems to us to be fatal. Defendant took the stand in his own behalf. Under cross-examination he was asked by the district attorney whether he had not been convicted of

the murder of a woman in Italy on the 16th day of April, 1903, and sentenced by the Court of Assize of Naples to imprisonment for the term of more than 18 years. He was asked whether he did not kill a woman on the bark Pietta, whether there has not been correspondence between the Italian government or Prime Minister of Italy and the Secretary of State of the United States, relative to his return to Italy to serve his sentence of 18 years for murder; whether the Italian government had not made a demand upon Robert Bacon, the Acting Secretary of State, in the year 1908, that he be surrendered to them in order that he might serve such sentence; whether (showing a picture) the Prime Minister of Italy had not sent this picture to the Secretary of State so the police could identify him; whether he did not kill a woman named Giovanna Scotto Loquianco, on the 10th of June, 1900, at Pensacola, Fla.; whether he was not convicted and sentenced by an Italian court to imprisonment for 18 years for killing a man on an Italian ship lying off the coast of Pensacola; whether he was not a fugitive from justice after conviction by the Italian court; whether it had not been a subject of correspondence between the Prime Minister of Italy and the Secretary of State in relation to his extradition; whether he had not smuggled into the United States kid gloves of the value of $10,000 on or about the 24th of September, 1908; and whether he had not threatened to kill a man if he did not go upon his bond when arrested for smuggling.

The defendant denied his guilt. No attempt was made on the part of the learned district attorney to establish either of the facts suggested by his innuendoes. But in summing up the case he said:

"He denied that he had been convicted of murder and of larceny (sic) twice in Italy. Now, you know how these foreign governments keep the records from the day of birth until the day of death, and you can determine for yourselves whether you believe his denial or whether all of these records are false.

"Defendant's Counsel: I wish to interrupt and to take an exception upon the record. There is no proof of any records before the jury. There were no records introduced in evidence.

"The District Attorney: There was some examination of this defendant upon correspondence between our Secretary of State and the Minister of Italy.

"Defendant's Counsel: Not introduced in evidence.

"The District Attorney: No, but they are in a way on the cross-examination of this defendant, and they are mentioned in the record. Therefore I had a right to mention them here."

The learned county judge presiding at the trial, instead of rebuking the district attorney for this unjustifiable conduct, simply remarked, when defendant's counsel protested, "Your exception is noted," and allowed the trial to proceed. From this the jury might readily infer that there was nothing calling for criticism in the language of the district attorney, and that they might consider his reference to these records as properly made. A district attorney oftentimes encounters difficulties in the performance of his duties. He should be commended for zeal in prosecuting criminals, but he should not allow his zeal to outrun his discretion. But if, in the heat of contest, he oversteps the bounds of propriety, it is the duty of the presid-

ing judge, who is presumed to occupy a position of cool impartiality, to check such outbreaks, advise the jury of the impropriety thereof, and warn them not to be affected thereby. Convictions of guilty men are desirable, but conviction must be had in accordance with established rules of law. From convictions otherwise obtained, which appellate courts are constantly compelled to set aside, no good, but positive injury, results. In this connection we cannot forbear quoting from the opinion of Judge Vann, and the concurring opinion of Chief Judge Cullen, of the Court of Appeals, in the case of People v. Cascone, 185 N. Y. 318, 78 N. E. 293. Judge Vann says:

"We close our review with the remark, made as a deliberate remonstrance against the necessity for frequent reversals in criminal cases, that too many prosecuting officers run dangerous, foolish, and unprofessional risks in order to secure a conviction."

And Judge Cullen says:

"I join with my Brother in reprehending the manner in which important criminal prosecutions are so frequently conducted at this time, often evincing either ignorance of the ordinary rules of evidence or disregard for the interest of both the people and the defendant, which alike require that a trial should be had according to law."

The judgment of conviction must be reversed, and a new trial granted. All concur.