THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MARTIN KRAUS, Defendant.

Court of General Sessions, County of New York, June 8, 1933.

*Thomas C. T. Crain, District Attorney [George M. Carney, Deputy Assistant District Attorney,* of counsel], for the plaintiff.

*Andrew J. Dritsas,* for the defendant.

FRESCHI, J.    The defendant moves to set aside the verdict of the jury finding him guilty of the crime of manslaughter in the second

degree, and for a new trial on the ground of misconduct by one of the jurors who, in the course of the trial, visited the scene of the crime without the permission or knowledge of the court.

The grand jury of the county of New York indicted the defendant for this crime arising out of the grossly negligent manner in which he operated an automobile, knowing that the brakes thereof were defective, in the vicinity of Duane and Hudson streets, in the city and county of New York, and thereby causing the death of one Michael Murphy. While the trial was in progress, one of the jurors, at a time when the jury had been excused, went to the scene of the crime and there personally viewed the intersecting streets. While at the scene, this juror spoke to no one, but during the deliberation in the jury room he mentioned the fact to his fellow jurors that he had made this visit.

The learned district attorney offered in evidence, as People's exhibit during the trial, a photograph of the scene showing the intersection of these streets. There was considerable testimony by police officers and others describing the width of the streets, the location of the crosswalks, the character of the pavement and other matters appertaining to that particular locality, all of which was not disputed by the defendant.

Section 465 of the Code of Criminal Procedure sets forth cases in which a judge has the power to set aside a verdict and grant a new trial, and provides, among other cases, that the court in which a trial has been had upon an issue of fact has power to grant a new trial, when a verdict has been rendered against the defendant, by which his substantial rights have been prejudiced, upon his application, in the following cases: " When the jury has received any evidence out of court, other than that resulting from a view, as provided by section 411." "And when the jury * * * have been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

Clearly, under this section it is incumbent upon the moving party to show that the case falls within one of the provisions of the section, and also that the substantial rights of the defendant have been prejudiced thereby, by the conduct of the juror about which the defendant now complains. After the rendition of the verdict, the following colloquy between the court and the juror appears in the record of the case:

The Court: " I desire to make the record clear. While the jury was deliberating upon this case, I received a memorandum note from Mr. Purdy, the foreman, advising me that juror F. D. Denton stated to the foreman of the jury that he had visited the place where the accident happened on Friday afternoon between one and two P. M.

" I desire to put this on the record in the interest of justice. I think it is nothing more than fair that that should be indicated in the case, and to add that when the Court gave the jury its admonition there was no order made that the jury should not visit the scene of the accident.

" That is important because a question might be raised as to whether such conduct might constitute either a civil or criminal contempt.

" Is Mr. Denton there? [Juror Denton stands up.]

" To get one or two points clear: The place visited, Mr. Denton, was Hudson Street and Duane, is that right? "

Mr. Denton: " Yes, sir."

The Court: " Were you alone at the time? "

Mr. Denton: " Yes, sir."

The Court: " Did you talk to anybody about the case? "

Mr. Denton: " I did not."

The Court: " Did you communicate the matter to anybody afterwards until you mentioned it in the jury-room? "

Mr. Denton: " No."

The Court: " It remained a secret with you up until then? "

Mr. Denton: " Yes, sir."

The Court: " The place visited is a well-known thoroughfare in the City of New York. Besides, in the course of the trial, we had here a photograph showing that exact location and sketches or diagrams, after a fashion, were made and put in evidence. So that, I take it, the character of the place is a matter of some importance. Inasmuch as the place would not likely be changed in any way, it being a public thoroughfare, I take it that the location was on Friday exactly as it was on the day of the accident or the collision. You know of no changes, do you, Mr. Dritsas, in this location? "

Mr. Dritsas: " No, I do not."

The Court: " Duane Street and Hudson Street have been in the same condition for years. Of course, it is not proper for a juror to visit the scene of an alleged crime unless an order of the Court is made, in order to avoid not only an irregularity but to avoid doing any substantial injustice to the rights of the accused."

Mr. Denton: " Your Honor, I wasn't aware of that fact, and it wasn't clear in my mind just from the photograph, and I wanted to clear up the point about the place. I wasn't aware that that was not permissible."

The Court: " Yes, that is an irregularity. I find that in the case of *People* against *Pisano*, 142 App. Div. 524, it speaks of the irregular practice in doing the things referred to here, but the learned late Judge Burr, who wrote the opinion in that case, said that

although what had taken place in that case was irregular, that the Court did not deem it fatal error for the reason that the view of the premises is not a part of the trial of the action.

" In some jurisdictions it has been held to be a reversible error and a ground for a new trial; others hold the contrary.

" Now, I do not think that this misconduct of Juror Denton is of such character as might affect the result here. He just viewed the public highway; he spoke with no one and did not communicate the fact of his inspection to any person until he got to the jury-room, and I should be inclined to say that the substantial rights of the defendant have not been affected in such a way as to require the setting aside of this verdict on that ground. I might well imagine a case where a juror in going to and from his home would pass the place of an alleged crime; the mere fact that he walked through there and could see it, I do not think, would make any serious difference and impair the rights of the defendant, unless there was a dispute as to the place and as to other things connected with it. Here the testimony was clear as to the width of the street, the location of the cross-walks and how those streets intersect each other at that point."

The open court is the proper place where information about the case shall be furnished, unless the case is one where, in the opinion of the court, it is proper that the jury should view the place in which the crime is charged to have been committed or in which any material fact occurred, and then under the charge of proper officers or by a person appointed by the court for that purpose. Unauthorized investigations by way of view have invariably been regarded as improper; the only question is whether the irregularity was dangerous enough to require a new trial. (2 Wigm. Ev. §§ 1166, 1167; Underhill Crim. Ev. [3d ed.] § 362.)

Where it does not appear that any new fact was disclosed or that the verdict was affected thereby, or that the substantial rights of the defendant were in any wise prejudiced by the behavior of the juror, the court ought not to interfere with or disturb the finding of the jury. (See *Roberts* v. *United States*, 60 F. [2d] 870, at pp. 872, 873; *People* v. *Thorn*, 156 N. Y. 286, 290; *People* v. *Johnson*, 110 id. 135, 143; *People* v. *Menken*, 36 Hun, 90, 99; *People* v. *Smith*, 187 N. Y. Supp. 836, 844; *State* v. *McKiel*, 122 Ore. 504, 507; 259 Pac. 917, 918; *Warner* v. *State*, 56 N. J. L. 686; 29 Atl. 505, 507.)

A mere inspection or a visit to a scene by a juror not in the presence of the defendant or his counsel is not a violation of defendant's rights and is not a part of the trial, nor is it the taking of evidence within the meaning of section 465 of the Code of Criminal Procedure. Judge HAIGHT, in writing in *People* v. *Thorn* (*supra*,

at p. 290), says: " The argument presented in the cases holding that a view of the premises is improper without the presence of the defendant is to the effect that the view of the jurors cannot be considered an idle ceremony, but must be deemed to have been made for a purpose, and, taking place under an order of the court, is a part of the trial; that the jurors in making such inspection necessarily made use of their sense of sight, and, although no word may be spoken, they draw conclusions from the silent, inanimate objects which they see; that these objects are mute witnesses with which the defendant must be confronted. This view was adopted in elaborate opinions by Justices LEARNED and BOCKES, in the General Term, Third Department, in the case of *People* v. *Palmer* (43 Hun, 401). In the case of *People* v. *Bush* (68 Cal. 623, 630) the same view was adopted, but by a divided court;" and at page 297 the court further says: " It is doubtless true, as claimed, that jurors may draw inferences from the objects which come under their vision. While mute, inanimate objects may, in one sense, be witnesses, are they witnesses within the contemplation of the Constitution and the statute? We think not. If seeing the locality is the taking of evidence in one case, it must be in another. If viewing the locality during the trial is the taking of testimony, why is not the seeing of the locality before the trial the taking of testimony? It often occurs that crimes are committed in public places, familiar to the greater portion of the inhabitants of a county, where it would be difficult, if not impossible, to procure a jury which had not seen the locality time and time again. Such persons having seen the locality, and being familiar with it, could, if they were sitting upon a jury, readily determine whether a witness was accurately describing the place. Their knowledge of the locality would constantly operate upon their minds during the trial in determining the force and effect which should be given to the testimony. If seeing is the taking of evidence, it would follow in every case that a juror who had seen and was familiar with the locality would be incompetent to sit as a juror, for he would have taken testimony in the absence of the accused, with which he had never been confronted, or had an opportunity to explain.

" To illustrate further: In front of this Capitol, in the city of Albany, there is a park. On the opposite side of the park stands the court house. Should a felony be committed in the park, the accused could not well be brought to trial, for the reason that every juror summoned in the case necessarily would see and view the locality every time he entered or departed from the court house.

" These are some of the absurd results which would naturally follow the construction contended for. Our minds do not incline

that way. Every reasonable safeguard provided by the Constitution, or the Bill of Rights, for the protection of persons accused of crime, should be scrupulously recognized and preserved by the courts; but we should not attempt to deprive the jury of the means of determining the truth or falsity of the testimony of witnesses, or to so surround criminal trials with technical and profitless restrictions as to make it difficult, if not impossible, to reach a verdict that can be upheld. It appears to us that the more rational and reasonable construction to be given to the provisions of the section is that the view is not the taking of testimony within the meaning of the Bill of Rights; but that the sole purpose and object of the view is to enable the jurors to more accurately understand and more fully appreciate the testimony of witnesses given before them."

The circumstances as to how this crime was committed are clear; and the proof in this case clearly established the defendant's guilt. At the trial, there was no dispute as to the exact location of its commission; and it is not claimed nor established by the defendant that at the time the juror viewed the locality, the street plan or the relation of one street to another at the point in question was in any way changed or that their position was not the same as on the day of the tragedy. *People* v. *Gallo* (149 N. Y. 106), cited by the defendant, is distinguishable. The other case submitted by the defendant (*People ex rel. Munsell* v. *Court of Oyer & Terminer,* 101 N. Y. 245) is not in point, since it deals principally with the question of contempt of a juror who visited the premises for the purpose of obtaining information relating to the case in which he was acting as a juror and whether his conduct tended to impede and prejudice the rights of the parties to the trial.

I am satisfied, under the circumstances, that in no possible way could the inspection complained of have influenced the result herein; and I find nothing that prevented " a fair and due consideration of the case." The inspection by the juror was in its nature cumulative, inasmuch as the scene of the crime was clearly shown on the photograph placed in evidence by the People and in the testimony offered by the district attorney.

Motion denied.